## COMMONWEALTH VS. JERMAINE BERRY.

No. 03-P-969.

Suffolk. September 8, 2006. - January 19, 2007.

Present: GREENBERG, GREEN, & GRAHAM, JJ.

*Homicide. Practice, Criminal,* Assistance of counsel, Conduct of prosecutor.

At the trial of an indictment charging the defendant with voluntary manslaughter, the judge properly denied the defendant's motions for a required finding of not guilty, where the evidence presented during the Commonwealth's case was sufficient for the jury to conclude beyond a reasonable doubt that the defendant had stabbed the victim, and the Commonwealth's case did not deteriorate after the close of its evidence. [80-81]

At a criminal trial, defense counsel did not provide ineffective assistance, where his decision to introduce statements made by a third party, in which the third party denied culpability, was reasonable in the circumstances [81-83]; where counsel's cross-examination of a prosecution witness, which elicited evidence that the defendant had the knife with which the victim was stabbed, did not constitute substandard behavior of counsel, but even if it had, it would not have deprived the defendant of a substantial defense [83-84]; where counsel made a worthy strategic decision not to call two witnesses, in that both witnesses could have been discredited easily for personal bias and the content of the witnesses' proposed testimony had already been admitted in evidence [84-85]; where counsel's failure to object to a particular assertion in the prosecutor's closing, while unreasonable, did not deprive the defendant of a substantial defense [85-86]; and where counsel's carelessness in drafting affidavits for three witnesses did not deprive the defendant of a substantial ground of defense, in that the real problem with the witnesses' credibility lay in their willingness to sign affidavits that contained errors [86].

At the trial of an indictment charging the defendant with voluntary manslaughter, several allegedly misleading or false statements made in the prosecutor's opening and closing arguments were all properly grounded in the evidence and reasonable inferences therefrom, and did not create a substantial risk of a miscarriage of justice. [86-89]

There was no merit to a criminal defendant's argument that alleged mistakes of defense counsel, combined with alleged misstatements of evidence by the prosecutor during her opening and closing arguments, impaired the defendant's rights to a fair trial and due process. [89-90]

INDICTMENT found and returned in the Superior Court Department on October 17, 1994.

After review by the Supreme Judicial Court, 431 Mass. 326 (2000), the case was tried before *Christine M. McEvoy,* J., and a motion for a new trial was heard by her.

*Janet H. Pumphrey* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. As proof of its charge of voluntary manslaughter at the defendant's second trial,[1] the Commonwealth offered, in addition to testimony of other witnesses to the event, the testimony of one of the victim's friends, Renée Bailey, that many people were involved in the brawl just outside of the Carter American Legion Post, a social club in the Mattapan section of Boston. The victim and the defendant engaged in a heated argument, which resulted in the victim being stabbed during an ensuing free-for-all. During her cross-examination, Bailey gave the most damaging testimony against the defendant when she told the jury not only that she saw "a shiny object" in the defendant's hands just before the victim went down, but also, "I have no doubt in my mind that that was a knife." The defendant moved for a required finding of not guilty pursuant to Mass.R.Crim.P. 25, 378 Mass. 896 (1979), after the Commonwealth rested its case, after the close of all the evidence, and again after the verdict; the motion was denied each time by the judge. The defendant's direct appeal from the denial of that motion was stayed pending consideration of his subsequent motion for new trial pursuant to Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). After an evidentiary hearing on the defendant's motion for new trial, conducted over the course of three days by the same judge who had presided over the trial, the motion was denied. The appeal before us centers on the denial of these motions.

---

[1]The defendant was initially indicted for murder in the second degree. At his first trial, he was convicted of voluntary manslaughter. His conviction was reversed by the Supreme Judicial Court, see *Commonwealth* v. *Berry,* 431 Mass. 326, 339 (2000) (*Berry I*), remanding for a new trial on the theory of his individual culpability for voluntary manslaughter. The conviction was reversed in *Berry I* because the case had been submitted to the jury on theories of both individual and joint liability on a general verdict slip, *id.* at 330-334, but the court held that there was not sufficient evidence to warrant a rational jury in finding beyond a reasonable doubt that the defendant was a joint venturer.

1. *Sufficiency of the evidence of voluntary manslaughter.* In his direct appeal, the defendant argues that there was insufficient evidence from which the jury could infer that he possessed a knife during the fight with the victim; therefore, he could not have been the stabber. He also claims that the evidence pointed to another person at the scene, his cousin Isaac ("Ike") Wilkerson, being the stabber. We examine the evidence under the familiar *Latimore* standard. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

The jury could have found that the defendant and several companions, including Kenneth McFadden and Ike Wilkerson, were all involved in a fight with the victim and his friends. As the combatants in the fight slowly moved down the street in a group, a crowd gathered. Bailey observed that the defendant was fighting with the victim. This fact was corroborated by the testimony of Sean Mack, the victim's brother. A police officer estimated that approximately one hundred people gathered at the scene, and that three or four groups were fighting one another. While standing near the defendant and the victim, who were arguing, Bailey heard Anton Warren, a friend of the victim, "screaming out, . . . 'Put the knife away. Put it away. You don't need it.' " At that moment, Bailey noticed a shiny object in the defendant's hand. A few minutes later, she saw the victim lying on the ground, bleeding, and the defendant throwing his shirt at him and spitting on him.

After the police officers arrived and were apprised by Mack that the victim had been stabbed, they chased the defendant and arrested him. Upon his arrest, he gave a false surname. Deoxyribonucleic acid (DNA) analysis revealed that blood on the defendant's shirt, shorts, and sun visor, as well as on a knife found nearby, was consistent with the victim's blood. Mack did not realize his brother had been stabbed and was unable to say at trial that he observed a knife during the fray. Even so, a police officer testified that Mack, just after the event, identified the defendant as "one of the two involved in the stabbing," and also said that "the guy with a visor has a knife." Another officer testified that Mack identified the defendant as "one of the ones that stabbed my brother."

The portions of the evidence we have outlined permit us to

conclude that a reasonable jury could find beyond a reasonable doubt that the defendant was the stabber. Although Bailey did not state specifically that the defendant had a knife until she was cross-examined by defense counsel, she testified on direct examination that she saw a "shiny object" in the defendant's hands, and her conclusion that the object was a knife was supported by other evidence. At least two other witnesses testified that the defendant was the only person near the victim when they were fighting and when the victim fell to the ground. Additionally, as noted above, articles of the defendant's clothing were stained with blood consistent with the victim's blood, including the defendant's shirt and visor, which were recovered near the area where the victim fell, as well as shorts the defendant was wearing at the time of his arrest. From this evidence, the jury could have inferred that it was the defendant who wielded the knife and inflicted the fatal wound. Although there was no direct evidence that he did so, such specificity is not required where, as here, there was strong circumstantial evidence. See *Corson* v. *Commonwealth*, 428 Mass. 193, 197 (1998); *Commonwealth* v. *Lao*, 443 Mass. 770, 779 (2005).

Nor did the Commonwealth's case deteriorate after the close of the Commonwealth's evidence. See *Commonwealth* v. *Doucette*, 408 Mass. 454, 462 (1990), citing *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 n.1 (1976). It was for the jury to determine the credibility of the defense witnesses. The jury were entitled to disbelieve the testimony as to Ike Wilkerson's "confession," received in evidence as an excited utterance heard by defense witnesses, three of whom had signed identical affidavits.[2] "In deciding a rule 25(b)(2) motion for a required finding of not guilty following a guilty verdict, . . . the judge does not properly exercise discretion concerning the weight or integrity of the evidence, but instead must assess the legal sufficiency of the evidence by the standard set out in *Commonwealth* v. *Latimore*, 378 Mass. [at] 677. . . . The question is one of law." *Commonwealth* v. *Doucette*, 408 Mass. at 456. There was no error in the denial of the defendant's motion for a required finding of not guilty.

2. *Ineffective assistance of counsel.* We address the defen-

---

[2] Ike Wilkerson was not called to testify at the second trial.

dant's contentions asserting instances of ineffective assistance of counsel. "For the defendant to prevail on [this type of] claim . . . , we must conclude, first, that 'there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer,' and, second, that 'it has likely deprived the defendant of an otherwise available, substantial ground of defen[s]e.' " *Commonwealth* v. *Ortega,* 441 Mass. 170, 175 (2004), quoting from *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). A court will give deference to counsel's tactical decisions unless "manifestly unreasonable." *Commonwealth* v. *Sena,* 441 Mass. 822, 825-826 (2004).

a. *Introduction of statements denying culpability made by third party.* First, the defendant contends that defense counsel was ineffective because he introduced a statement from Ike Wilkerson denying that he had stabbed the victim, thus undermining the defense theory of the case that Wilkerson committed the stabbing. We conclude, however, that the defendant fails to meet the first prong of the two-part test for ineffectiveness of counsel established in *Commonwealth* v. *Saferian, supra,* because defense counsel's conduct did not fall below that of an average lawyer in the same or similar circumstances.

After the hearing on the defendant's rule 30(b) motion, the judge properly found that the decision to introduce Wilkerson's denials was a strategic decision reasonable in the circumstances. In his affidavit, trial counsel stated that he "decided to introduce the statements of . . . Wilkerson despite his denials of guilt therein," because counsel "felt the inconsistencies were consciousness of guilt evidence which buttressed the credibility of the civilian witnesses who testified that Wilkerson had made inculpatory statements to them, and outweighed the value of the denials for the prosecution." The judge noted, "It was clear at the hearing that [counsel] was fully aware of the proceedings at the first trial, the transcripts and the strategies employed. He made his decisions based on his analysis of that trial." Courts are careful to avoid characterizing every unsuccessful defense as unreasonable and instead separate strategic judgments from substandard representation. *Commonwealth* v. *White,* 409 Mass. 266, 272-273 (1991). Given the evidence submitted at the hear-

ing, we conclude that the judge did not abuse her discretion in finding that defense counsel's decision to introduce Wilkerson's denial was not substandard and, therefore, did not meet the first prong of the ineffective assistance test set forth in *Saferian.*

b. *Eliciting evidence that the defendant had the knife.* The defendant also argues that his trial counsel was deficient "because the only evidence that the defendant had a knife was elicited by defense counsel . . . after the witness [Bailey] refused to so testify on direct." We conclude that defense counsel's cross-examination of Bailey did not constitute "behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer" and that, even if it did, the information elicited did not deprive the defendant of an otherwise substantial defense. See *Commonwealth* v. *Saferian,* 366 Mass. at 96.

Bailey, a prosecution witness who was a friend of the victim, surprised defense counsel by stating on cross-examination that she was sure she saw a knife, despite the fact that she had been unable to provide such certainty during direct examination and when testifying in the first trial. After Bailey's assertion, defense counsel impeached her with prior statements and testimony to the contrary — that she had seen simply a shiny object, not specifically a knife. Additionally, during his closing arguments, counsel sought to discredit Bailey's testimony on the basis of her uncertainty. Evaluation of trial counsel should not be made "with the advantage of hindsight." *Commonwealth* v. *Drumgold,* 423 Mass. 230, 262 (1996). It is up to the jury to assess the credibility of witnesses. The credit Bailey's testimony received was the result of the jury's assessment, not substandard defense representation.

Moreover, even if this cross-examination opened up Pandora's box, the questioning did not deprive the defendant of a substantial defense. While Bailey had not previously stated that she was certain she saw a knife in the defendant's hand, she did testify on direct examination and in the first trial that she saw "a shiny object" in the defendant's hand. Combining that testimony with other evidence that the defendant was the only person near the victim as he fell to the ground and evidence of the victim's blood staining the defendant's clothing, a reason-

able jury could still infer that the defendant had the knife and committed the stabbing. Any credit the jury gave to Bailey as a result of trial counsel's admittedly "poor" cross-examination only enhanced an inference that was otherwise supported by other witnesses.

c. *Failure to call two witnesses.* The defendant also faults defense counsel because he failed to call two crucial witnesses who were available and prepared to testify that Ike Wilkerson did the stabbing. In her memorandum of decision and order on the motion for new trial, the trial judge stated that defense counsel made a worthy strategic decision not to call the witnesses, Senator Dianne Wilkerson (the defendant's aunt) and Labridgette Combs, because (a) both witnesses could be discredited easily by the prosecution for personal bias, and (b) the content of the proposed testimony of the witnesses had already come into evidence through other witnesses or had been discredited for lack of proof.[3]

With regard to Senator Wilkerson's credibility, she was the aunt of both the defendant and Ike Wilkerson. Additionally, as a public figure, she had attracted publicity in the local papers for income tax problems, a circumstance that defense counsel felt could be used to impeach her testimony. Further, Senator Wilkerson's credibility probably would have been damaged by the fact that her claims about Ike Wilkerson's interview with the police (at which she claimed to have been present) are irreconcilable with the tape recording of the police interview, which did not indicate that she was present. As for Combs, she was, at the time of trial, the defendant's girlfriend and the mother of his child. Such a close personal relationship would make her an easy target for impeachment.

Additionally, the information these witnesses would have contributed was already on the record, and therefore, the decision not to call them did not deprive the defendant of a substantial defense. Four witnesses — Patricia Lewis, Carol Ann Jameson, Monique Lewis, and McFadden — had already testified that Ike Wilkerson told them on the night of the murder

[3]In his affidavit supporting the defendant's motion for new trial, defense counsel stated that he should have called the witnesses. While in retrospect, this may or may not be the case, we cannot say that the judge's conclusion was not supported by the record.

that he had stabbed the victim. Through these four witnesses, defense counsel supported and argued the defense that Senator Wilkerson and Combs might have provided for the defendant. Therefore, in addition to the credibility issues noted above, the testimony of Senator Wilkerson and Combs would have been cumulative of that already given by the other defense witnesses.

d. *Failure to object to assertion in prosecutor's closing that McFadden gave the defendant the knife.* Next, the defendant contends that his trial counsel failed to object to the prosecutor's statement during closing arguments that McFadden handed a knife to the defendant, an assertion the defendant claims was not supported by the evidence.

We agree that defense counsel's failure to object was unreasonable, as there was no direct evidence that McFadden ever had a knife; counsel should have objected in order to preserve the issue for appeal. In his affidavit submitted for the hearing on the defendant's rule 30(b) motion, defense counsel stated, "I do not know why I didn't object to the [prosecutor] during her closing introducing a theory of the case — that . . . McFadden handed [the defendant] a knife just prior to the stabbing — unsupported by the evidence. I must have been 'asleep at the switch.' "

Even so, evaluation of the defense attorney's omission should not be made "with the advantage of hindsight." *Commonwealth v. Drumgold,* 423 Mass. at 262. Trial counsel also stated in his affidavit that he thought his client was likely to "win." From that perspective, one could understand counsel's reluctance to interrupt the prosecutor's closing and possibly irritate the jury and judge. The average defense counsel easily might have made the same decision.

Nevertheless, even if the first aspect of the *Saferian* test had been met, defense counsel's failure to object did not deprive the defendant of a substantial defense. Even absent the prosecutor's assertion that McFadden gave the defendant a knife, the jury could have found, based on all the evidence, that the defendant stabbed the victim. The essential question for the jury was whether the defendant had a knife, not how he obtained it. As a result, the prejudicial effect of the testimony, if any, of the as-

sertion that McFadden gave the defendant a knife was suf-
ficiently slight that it did not create a substantial risk of a
miscarriage of justice. See *Commonwealth* v. *DiRusso*, 60 Mass.
App. Ct. 235, 241-242 (2003).

e. *Trial counsel caused three witnesses to sign identical af-
fidavits with factual mistakes.* The defendant also contends that
his trial counsel in the first trial[4] denied him effective assistance
by causing three of the defense witnesses to sign identical,
sloppy affidavits that provided fertile material for cross-
examination. We conclude that defense counsel's actions, while
careless, did not deprive the defendant of a substantial ground
of defense. Despite the inaccuracies in the affidavits, the real
problem with the defense witnesses' credibility was not that
counsel had erred in drafting the affidavits, but that the wit-
nesses had been willing to sign the affidavits despite the errors.
The affidavits provided only one basis of impeachment.
Therefore, trial counsel's carelessness in these respects did not
deprive the defendant of a substantial ground of defense.

3. *Other issues.* The several allegedly misleading or false
statements made in the prosecutor's argument were all properly
grounded in the evidence and reasonable inferences therefrom.
See *Commonwealth* v. *Dinkins*, 415 Mass. 715, 725 (1993).

Specifically, the defendant argues there was prosecutorial
misconduct, including (a) the fabrication of evidence in the Com-
monwealth's opening in stating that the knife was found in the
"path of flight" of the defendant; (b) the fabrication of evidence
in the Commonwealth's closing in asserting that the knife was
handed to the defendant by McFadden; and (c) repeated refer-
ences to the legal theory of joint venture where that theory was
rejected by the Supreme Judicial Court in this case.

After reviewing the record, we conclude that there was no
substantial risk of a miscarriage of justice introduced by pros-
ecutorial misconduct. Defense counsel failed to object to all but
one[5] of the prosecutorial statements questioned on appeal.
"Without a proper objection, the standard of review changes to

---

[4]Trial counsel at the second trial was not the same as counsel at the first
trial.

[5]See note 9, *infra.*

the defendant's detriment." *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 n.8 (1987). Where no objection to a prosecutor's statement was voiced at trial, and no request for special instructions was made, the defendant is not entitled to appellate review of those remarks as of right. *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978). However, we may review those alleged errors to determine whether there was a substantial risk of a miscarriage of justice. *Ibid.*

a. *Knife in path of "fleeing" defendant.* The defendant argues that there was no evidence that the knife was found in his "path," or that he was "fleeing." Applying the factors set forth in *Commonwealth* v. *Kozec, supra,* to the prosecutor's description during her opening of the knife being found in the path of the "fleeing" defendant, we conclude that this statement did not result in a substantial risk of a miscarriage of justice. The evidence supported the inference required to conclude that, in leaving the scene of the crime, the defendant passed the location where the knife was found. Additionally, two witnesses testified that the defendant ran or jogged from the scene — an adequate basis for an inference that he "fled." Moreover, any potentially prejudicial effect that may have been created by the prosecutor's statement was mitigated by the instructions given by the judge that neither opening nor closing statements were part of the evidence on which the jury could rely in reaching their decision.

b. *Assertion that McFadden handed a knife to the defendant.* The defendant also argues that the prosecutor's assertion during closing argument that McFadden handed a knife to the defendant during the fight resulted in a substantial risk of a miscarriage of justice. After carefully reviewing the record, we conclude that the McFadden role in the narrative given by the prosecutor during her closing argument can be supported by the record through an inference, albeit somewhat strained,[6] based on the evidence.

Although there was no direct evidence that McFadden ever

---

[6]There was no direct evidence that McFadden ever had a knife. The difficulties in reaching such an inference are as follows: Anton Warren testified that he saw someone with a knife standing on the sidewalk watching the escalating fight between the victim and the defendant. An inference that McFadden was the person Warren saw on the sidewalk requires rejection of an inference that McFadden was down the street fighting with Sean Mack when

had a knife, it is permissible to argue inferences supported by the evidence. Renée Bailey testified that she saw a shiny object in the defendant's hand,[7] and Anton Warren testified that he saw someone with a knife. Warren also testified that he saw a person on the sidewalk watching the altercation between the victim and the defendant while he (Warren) was trying to break up the fight.

To conclude that McFadden gave the knife to the defendant, the jury could have inferred that McFadden was the man Warren described with a knife on the sidewalk and that he gave the knife to the defendant when Warren left the victim to help Sean Mack. The jury, to make this inference, could have discredited McFadden's testimony that he never had a knife and that he was fighting with someone else before running from the scene. Because Mack and McFadden never conclusively identified one another as their respective opponents, it is possible to infer that McFadden was the person Warren saw standing on the sidewalk with a knife.

Moreover, the effect of the prosecutor's statement was mitigated by the judge's instructions to the jury, in which she emphasized that nothing stated during closing arguments could be considered as evidence.

Lastly, it is unlikely that the prosecutor's formulation regarding McFadden, in the circumstances of this case, had an impact on the outcome reached by the jurors. Eliminating from the evidence the inference that McFadden handed the knife to the defendant, the jury still could have concluded (and most likely did conclude) that the defendant had a knife because Bailey

---

Warren saw the person on the sidewalk with the knife. However, there is significantly more support for an inference that McFadden was fighting with Mack down the street when Warren saw the person on the sidewalk with the knife than there is for an inference that McFadden gave the defendant the knife. The testimony from McFadden describing the fights he engaged in mirrored the testimony given earlier in the trial by Mack, which suggests that they were fighting one another. If McFadden was not the person on the sidewalk watching the fight, no inference can be drawn to suggest that he ever had a knife to give to the defendant.

[7]For purposes of this discussion, we do not consider Bailey's testimony, solicited by defense counsel on cross-examination (now complained of as ineffective assistance of counsel, see part 2[b], *supra*), that the defendant had a knife.

testified that she saw him with a shiny object, he had been seen fighting with the victim, and, after the victim was stabbed, the defendant's clothing was covered with blood consistent with that of the victim. Given the presence of this additional evidence, there is only a remote possibility that the prosecutor's statement regarding McFadden, even if error, affected the jury's decision.[8] See *Commonwealth* v. *Kozec*, 399 Mass. at 518.

c. *References to the joint venture theory previously rejected by the Supreme Judicial Court.* The defendant also contends that his defense was severely compromised by the prosecutor's repeated references in her closing argument to the legal theory of joint venture where that theory was rejected by the Supreme Judicial Court in this case. These references, the defendant argues, were instances of prosecutorial error because joint venture was not a theory upon which the jury could base their verdict.

As the judge noted in her memorandum of decision and order on motion for new trial, the prosecutor's statements using the term "joint venture" did not refer to the defendant but rather to McFadden's role and to the alleged collusion of the defense witnesses who submitted identical affidavits and testified that Ike Wilkerson had confessed to the stabbing.[9] These inferences were supported by the evidence, and thus were not improper. Moreover, the remarks could not have misled the jury, because the judge did not charge the defendant on joint venture, but rather "specifically [instructed] the jury that the defendant was being tried as a principal only, as the alleged stabber of the victim."

4. *Cumulative errors.* Lastly, the defendant argues that the mistakes made by defense counsel, combined with the misstate-

---

[8]Likewise, defense counsel's failure to elicit testimony from McFadden describing Wilkerson's return to the scene in an effort to retrieve his knife did not create a substantial risk of a miscarriage of justice because of the strong evidence that the defendant wielded the knife at the crucial time of the assault on the victim.

[9]Defense counsel objected to the prosecutor's statements referencing a "joint venture" by the witnesses testifying to Ike Wilkerson's confession, but was overruled. There was no objection to the statements concerning McFadden.

ments of evidence by the prosecutor during her opening and closing arguments, were so prejudicial that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland v. Washington*, 466 U.S. 668, 694 (1984), and that the errors "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 643 (1974). To the extent there were any errors, we have concluded that none of the individual instances raised here resulted in a substantial risk of a miscarriage of justice, nor did they collectively impair the defendant's rights to a fair trial and due process.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*