## Commonwealth vs. Darren Grant.

No. 07-P-1166.

Plymouth. September 10, 2008. - January 7, 2009.

Present: Cypher, Grasso, & Kantrowitz, JJ.

Further appellate review granted, 453 Mass. 1104 (2009).

*Sex Offender.*

At the trial of a petition for civil commitment of the defendant as a sexually dangerous person, the judge erred in requiring the Commonwealth to demonstrate that the defendant, who had been convicted of open and gross lewdness, a noncontact offense, was likely to cause physical harm to others if not confined, where this requirement improperly added an element to the statutory definition of a sexually dangerous person. [476-478]

Civil action commenced in the Superior Court Department on February 15, 2006.

The case was heard by *John P. Connor, Jr.,* J.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.

*William A. Korman* for the defendant.

Kantrowitz, J. The defendant, who was the subject of a petition for civil commitment as a sexually dangerous person, exposed himself to girls as young as twelve and women as young as fifty-one. He exposed himself near a subway station; on the way to therapy; while on probation; while in prison; and, in the underlying case giving rise to this petition, to two fifteen year old girls in a public library. Occasionally, he also masturbated openly. Despite five psychologists all opining he was likely to reoffend,[1] the trial judge held that the Commonwealth failed to prove its case, in that it did not demonstrate that the defendant, who had committed only noncontact offenses, was dangerous. We reverse.

*Background.* The defendant, thirty-one years of age at the

---

[1]At oral argument, we learned that the defendant was again convicted of open and gross lewdness and is currently in jail.

time of trial, was first convicted of open and gross lewdness at the age of sixteen. Including this juvenile offense, the defendant has been convicted of the same offense eleven times, each time for exposing himself and at times for masturbating in public. In 1997, the defendant was twice convicted of open and gross lewdness — in one instance, in front of a thirteen year old girl while he was on his way to his therapy appointment. During his incarcerations, the defendant has reoffended, including in 2000 when he exposed himself to a female correction officer. As an adult, he has been convicted of no crime other than open and gross lewdness. As previously mentioned, the victims of the defendant's offenses were females ranging in age from twelve to fifty-one.

On July 31, 2003, the defendant pleaded guilty to, and received a jail sentence for, three counts of open and gross lewdness for exposing himself. The victims included, on one occasion, two fifteen year old girls in a public library; the defendant also exposed himself in the same library on another date. On February 15, 2006, as the defendant's scheduled release approached, the Commonwealth filed a petition pursuant to G. L. c. 123A, § 12, for his commitment as a sexually dangerous person. A two-day jury-waived trial was held in September, 2006. On September 27, 2006, the judge issued findings of fact and rulings of law denying the Commonwealth's petition. The judge found that "[t]he Commonwealth has not met its burden" of establishing that the defendant's conduct "satisfies the dangerousness necessary for a commitment under G. L. [c.] 123A." The judge also noted that there exist "real questions as to when and [to] what extent an exhibitionist causes harm to the public."

On appeal, the Commonwealth claims that the judge improperly added an element to the statutory definition of a sexually dangerous person under G. L. c. 123A, § 1, to require the Commonwealth to prove that the defendant is likely to cause physical harm to others if not confined.

*The law.* For the purposes of this case, in order to find the defendant to be a sexually dangerous person within the meaning of the statute, the Commonwealth had to prove beyond a reasonable doubt that he (1) was convicted of a sexual offense as

defined[2]; (2) suffers from a mental abnormality[3] or personality disorder[4]; and (3) as a result of suffering from that mental abnormality or personality disorder, is likely to reoffend if not confined to a secure facility. See G. L. c. 123A, §§ 1, 14(*d*).

Here, it is not disputed that the defendant was convicted of a covered sexual offense, nor essentially that he is likely to reoffend.

---

[2]As most recently amended, G. L. c. 123A, § 1, defines "sexual offense" to include (1) indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B; (2) indecent assault and battery on a mentally retarded person, G. L. c. 265, § 13F; (3) indecent assault and battery on a person fourteen and over, G. L. c. 265, § 13H; (4) rape, G. L. c. 265, § 22; (5) rape of a child under sixteen with force, G. L. c. 265, § 22A; (6) rape and abuse of a child under sixteen, G. L. c. 265, § 23; (7) assault with intent to commit rape, G. L. c. 265, § 24; (8) assault on a child with intent to commit rape, G. L. c. 265, § 24B; (9) kidnapping, G. L. c. 265, § 26, with intent to commit one of the above listed crimes; (10) enticing away a person for prostitution or sexual intercourse, G. L. c. 272, § 2; (11) drugging persons for sexual intercourse, G. L. c. 272, § 3; (12) inducing a person under eighteen into prostitution, G. L. c. 272, § 4A; (13) living off or sharing earnings of a minor prostitute, G. L. c. 272, § 4B; (14) *open and gross lewdness and lascivious behavior*, G. L. c. 272, § 16; (15) incestuous intercourse, G. L. c. 272, § 17, involving a person under twenty-one; (16) dissemination or possession with the intent to disseminate to a minor matter harmful to a minor, G. L. c. 272, § 28; (17) posing or exhibiting a child in a state of nudity, G. L. c. 272, § 29A; (18) dissemination of visual material of a child in a state of nudity or sexual conduct, G. L. c. 272, § 29B; (19) purchase or possession of visual material of a child depicted in sexual conduct, G. L. c. 272, § 29C; (20) dissemination of visual material of a child in the state of nudity or in sexual conduct, G. L. c. 272, § 30D (we note that G. L. c. 272, § 30D, simply confers jurisdiction upon the Superior Court to enjoin the dissemination of such materials); (21) unnatural and lascivious acts with a child under sixteen, G. L. c. 272, § 35A; (22) accosting or annoying persons of the opposite sex and lewd, wanton, and lascivious speech or behavior, G. L. c. 272, § 53; and (23) any attempt to commit any of the above listed crimes under G. L. c. 274, § 6, "or a like violation of the laws of another state, the United States or a military, territorial or Indian tribal authority any other offense [*sic*], [where the facts of the offense], under the totality of the circumstances, manifest a sexual motivation or pattern of conduct or series of acts of sexually-motivated offenses." See St. 2002, c. 492; St. 2004, c. 66, § 6.

[3]"[A] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." G. L. c. 123A, § 1, inserted by St. 1999, c. 74, § 4.

[4]"[A] congenital or acquired physical or mental condition that results in a general lack of power to control sexual impulses." G. L. c. 123A, § 1, inserted by St. 1999, c. 74, § 4.

The sole issue is whether his sexually deviant conduct is a result of either a mental abnormality or a personality disorder.

*The testimony at trial.* Five experts testified, two for the Commonwealth (Dr. Carol Feldman and Dr. Michael Murphy) and three for the defense (Dr. Mark Schaefer, Dr. Joseph Plaud, and Dr. Leonard Bard).

Doctor Feldman testified that the defendant has a personality disorder, as defined by the statute, in the form of an antisocial personality. Doctor Feldman also testified that he suffers from a mental abnormality in the form of exhibitionism. She concluded that "it is reasonable to expect" that the defendant will reoffend. The judge found that Dr. Feldman could not opine as to the seriousness of the harm created by the defendant's noncontact offenses.

Doctor Murphy also testified that the defendant has both a personality disorder and a mental abnormality, given his diagnosis of exhibitionism. He also concluded that the defendant is "highly likely" to reoffend. The judge found that Dr. Murphy, like Dr. Feldman, "was not sure about the seriousness of the harm [that] the defendant's conduct would cause to the public."

Like the Commonwealth's experts, Dr. Schaefer also concluded that the defendant has a personality disorder and a mental abnormality, and that there was a "high likelihood" he would reoffend. However, Dr. Schaefer opined that the defendant, who had not "inflicted a physical injury on [his victims]," was not a sexually dangerous person as he was not "likely to inflict serious harm."[5]

Doctor Plaud testified that the defendant has a mental disorder as defined in the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. rev. 2000) (DSM-IV),[6] but that he does not suffer from a "mental abnormal-

---

[5]Doctor Schaefer relied, erroneously, upon the definition of "likelihood of serious harm" discussed in *Commonwealth* v. *Boucher*, 438 Mass. 274, 279 n.4 (2002). This definition requires physical harm, but applies only to G. L. c. 123, not G. L. c. 123A, proceedings.

[6]Exhibitionism is one of a class of conditions identified in the DSM-IV as paraphilias. Paraphilias are characterized by "recurrent, intense sexual urges, fantasies, or behaviors that involve unusual objects, activities, or situations and cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." DSM-IV, *supra* at 535.

ity" as statutorily defined because exhibitionism, the particular type of mental disorder that the defendant displays, does not make him a menace to the health and safety of others.[7] He also opined that the defendant does not have a personality disorder, in that he does not have an antisocial personality disorder as defined by the DSM-IV.[8] The defendant does not have an antisocial personality disorder, Dr. Plaud concluded, in that his "nonsexual criminal history [is] not supportive of [a] general lifelong pervasive pattern of reckless disregard for the rights of others." He believed that there was a possibility that the defendant would reoffend, committing noncontact offenses.

Doctor Bard testified that the defendant does not meet the statutory definition of mental abnormality because "exhibitionism and other non-contact offenders . . . do not . . . pos[e] a menace to the health and safety of other persons as opposed to other much more serious offenses."[9] Doctor Bard also testified

---

[7]Doctor Plaud, in evaluating the defendant, looked at "the definition of [the] term[s] mental abnormality and personality disorder and then . . . further evaluate[d] the criteria under [*Commonwealth* v. *Boucher, supra* at 276,] in terms of the seriousness of the threatened harm, the relative certainty of the anticipated harm, and the possibility of successful intervention to prevent that harm . . . ." Based on this, he opined that "a person whose entire sexual offense history is exhibitionistic in nature, non-contact . . . does not rise to the level of someone who is a sexually dangerous person who is driven to engage in behavior that would be a menace to public safety."

[8]As defined in the DSM-IV, antisocial personality disorder is characterized principally by "a pervasive pattern of disregard for and violation of the rights of others occurring since age 15 years, as indicated by three (or more) of the following": (1) failure to conform to social norms with respect to lawful behaviors, (2) deceitfulness, (3) impulsivity, (4) irritability and aggressiveness, (5) reckless disregard for safety of self or others, (6) consistent irresponsibility, and (7) lack of remorse. DSM-IV, *supra* at 706. To meet the diagnostic criteria for antisocial personality disorder an individual must, in addition, be at least eighteen years of age and have exhibited symptoms of a conduct disorder with onset before the age of fifteen, and the occurrence of the antisocial behavior must not have occurred exclusively during the course of schizophrenia or a manic episode. *Ibid.* Doctor Plaud did not testify whether the defendant exhibited any of these seven characteristics, although he did acknowledge the defendant's juvenile offenses. It is difficult to discern, in reading the record, how one could conclude that the defendant does not possess at least three of these traits.

[9]Doctor Bard stated that if the definition of mental abnormality "had ended with the commission of criminal sexual acts, [the defendant] would certainly have met that [definition] because he has committed sexual acts." He went on

that the defendant does not have a personality disorder because he opined that exhibitionism, without any other antisocial actions, is insufficient to constitute a personality disorder. He also believed that "there is a moderate risk that [the defendant] will re-offend," committing noncontact offenses.

*Discussion.* "The determination of sexual dangerousness is a legal and not a psychiatric question." *Commonwealth* v. *Mc-Houl,* 372 Mass. 11, 15 (1977). All three of the defendant's experts offered improper legal interpretations of the definition of a sexually dangerous person. Dr. Schaefer, for instance, opined improperly on the legal criteria for a sexually dangerous person and imported the definition of "likelihood of serious harm" provided in G. L. c. 123, § 1, and discussed in *Commonwealth* v. *Boucher,* 438 Mass. 274, 278-279 & n.4 (2002),[10] as a requirement of sexual dangerousness in G. L. c. 123A. The G. L. c. 123 definition, which does require physical harm, only applies to commitment proceedings under G. L. c. 123. See G. L. c. 123, § 1. Doctor Bard improperly interpreted the statutory language of G. L. c. 123A, § 1, to require comparison of the relative seriousness of harm inflicted from contact and noncontact offenses, despite no indication in the language of the statute to do so. Doctor Plaud improperly excluded exhibitionism from the class of conditions that may render a person sexually dangerous, stating that he did not believe that exhibitionism "is the type of sexual behavior that defines what a sexually dangerous person is."

---

to state, however, that "because the law clearly asks either the Court or the psychiatrist or someone to go further than that and to differentiate those acts which would result in a menace to the health and safety of other persons to those that don't," he believed that "exhibitionism and other non-contact offenders . . . do not meet this criteria as posing a menace to the health and safety of other persons as opposed to other much more serious offenses."

[10]General Laws c. 123, § 1, defines "[l]ikelihood of serious harm" as "(1) a substantial risk of physical harm to the person himself as manifested by evidence of, threats of, or attempts at, suicide or serious bodily harm; (2) a substantial risk of physical harm to other persons as manifested by evidence of homicidal or other violent behavior or evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them; or (3) a very substantial risk of physical impairment or injury to the person himself as manifested by evidence that such person's judgment is so affected that he is unable to protect himself in the community and that reasonable provision for his protection is not available in the community."

The judge, in large part, adopted the opinion of the defense experts, ruling that the defendant was not a sexually dangerous person because the Commonwealth could not meet its burden of proving the defendant's danger to the public where the defendant's only offenses were noncontact offenses.[11]

The judge and defense witnesses needlessly addressed an issue already resolved. The Legislature, in enacting G. L. c. 123A, § 1, has already determined that one who has been convicted of open and gross lewdness, and who as a result of either a personality disorder or mental abnormality is likely to reoffend, is a sexually dangerous person. Holding that the Commonwealth was required to prove anything more was improper.[12] When interpreting a statute, the court must "not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design." *Commonwealth* v. *McLeod*, 437 Mass. 286, 294 (2002).

Danger, which includes the concept of "menace," to others, as it relates to the definition of sexually dangerous person, is comprehensive and encompasses not only physical injury, but also psychological, mental, and emotional trauma as well. See *McHoul, petitioner*, 445 Mass. 143, 155 (2005), cert. denied, 547 U.S. 1114 (2006). The Legislature "made no statutory distinction between classes of injuries likely to be inflicted on

---

[11]Specifically, the judge wrote: "Dangerousness to the public is one of those elements [to be proved]. When the likely conduct is of a predatory and violent nature its dangerousness is self evident. But when the acts are limited to open and gross lewdness the danger is not so obvious. The tolerance of today's society for sexual[ly] provocative conduct and apparel in advertising, entertainment and even high school dress codes raises real questions as to when and what extent an exhibitionist causes harm to the public. There is no question that the conduct is disgusting and merits criminal punishment but whether it satisfies the dangerousness necessary for a commitment under G. L. [c.] 123A must be proved. The Commonwealth has not met its burden on that element, and, as a result, the defendant is found not to be a sexually dangerous person."

[12]If the three elements are met, the defendant, ipso facto, is a danger to the public. The danger with which the statute is concerned is the danger of the commission of future sexual offenses if the defendant is not confined to a secure facility. See *Commonwealth* v. *Knapp*, 441 Mass. 157, 159 (2004); St. 1999, c. 74, emergency preamble (purpose of statute providing for civil commitment of sexually dangerous persons is to "protect forthwith the vulnerable members of our communities from sexual offenders").

future potential victims if the [defendant] were released into the community." *Id.* at 154-155.

It follows from what we have said that the judge misinterpreted the meaning of harm as it relates to sexually dangerous persons. By including open and gross lewdness, a noncontact offense, as an enumerated sexual offense for the purpose of defining the term "sexually dangerous person," the Legislature clearly intended sexually dangerous persons to include those who commit noncontact offenses. The fact that the defendant committed only noncontact offenses does not immunize him from being classified as a sexually dangerous person.[13] One who, as a result of a mental abnormality or personality disorder, has repeatedly exposed himself to adolescent girls and women in the past and is likely to do so in the future may pose a menace to the health and safety of others.[14]

In sum, the judge erred in adding an additional element to the statutory definition of sexually dangerous person. The amended judgment and order of discharge entered on October 6, 2006, is vacated, and the matter is remanded for the judge to apply the principles addressed herein. See *Commonwealth* v. *Boucher*, 438 Mass. at 281 (vacating lower court's decision to dismiss petition where judge applied "erroneous interpretation [of G. L. c. 123A, § 1,] to the evidence at trial").

*So ordered.*

---

[13]Using the rationale of the judge and defense experts, no one convicted of open and gross conduct, as well as several other listed offenses in G. L. c. 123A, § 1, see note 2, *supra*, could ever be found to be a sexually dangerous person, so long as no contact was made with the victim. This contravenes the plain language of the statute.

[14]For the purposes of this case, to convict the defendant of open and gross lewdness, G. L. c. 272, § 16, the Commonwealth was required to show that the defendant (1) intentionally and (2) openly (3) exposed himself to one or more persons (4) in such a way as to produce alarm and shock, which resulted in (5) "one or more persons [being] in fact alarmed or shocked by the defendant's thus exposing himself." See Model Jury Instructions for Use in the District Court, Instruction 5.42 (1988), cited with approval in *Commonwealth* v. *Kessler*, 442 Mass. 770, 773 n.4 (2004).