Feeley, Timothy Q., J.
In this case, the Commonwealth filed a petition pursuant to G.L.c. 123A, §§1 et seq., alleging that the respondent Donald Sauve (“Sauve”) is a sexually dangerous person. After an earlier judicial finding of probable cause, Sauve waived in writing his right to a jury trial [D. 15], and the matter was tried to the court without a jury on August 25, 26, and 30, 2010. At the conclusion of all the evidence, the court reserved on Sauve’s oral motion for directed verdict. Post-trial briefs were requested by the court and filed by both parties. Closing arguments and arguments on Sauve’s motion for direct verdict [D. 22] were held on October 25, 2010.
FINDINGS OF FACT
Sauve is a fifly-three-year-old man, bom in Salem, Massachusetts. He remains in contact with his mother and two brothers. He has no contact with his father, who was divorced from Sauve’s mother when Sauve was nine years old. Sauve was married from 1984 to 2007, but has no children. He remains in contact with his former wife. Sauve dropped out of school while in the tenth grade, after behavior problems, truancy issues, and poor academic performance. Sauve served in the National Guard from 1975 to 1981, and earned his GED in 1992. Substance abuse was present during his teens and early twenties, but does not appear to have been a significant problem in his later years. He has largely worked as a machinist since 1978, once working for the same employer for six to seven years.
Sauve’s criminal record is noteworthy for the number of non-contact sexual offenses for which he has been convicted. Starting in 1986, when he was twenly-nine, Sauve has been convicted of “open and gross” and/or “indecent exposure” eight times. Every one of *480 his open and gross convictions (seven in number) involved exposing his genitals and masturbating in front of one or more unsuspecting female persons.[1] His most recent open and gross conviction was on February 25, 2005. He has been incarcerated on that charge, another earlier conviction, and a subsequent probation violation much of the time since early 2005. His latest release date was scheduled for March 25, 2010, but this proceeding was commenced before that date, and since that time Sauve has been in custody as a result of this case.
Starting with Sauve’s most recent sexual offense conviction, and working backwards, the record before the court reflects the following.
1. January 7, 2005, Sauve was convicted in Essex Superior Court of two counts of open and gross. He was sentenced to two and one-half years in the house of correction, followed by five years of probation. After serving his house of correction sentence, Sauve was violated on his probation and sentenced to two to three years in state prison.[2] He was serving his state prison sentence when the SDP petition was filed in this case. A police report [Ex. 3] discloses the date of offense as July 26, 2004, with events occurring at a public beach in Marblehead, MA. Two female witnesses (ages 47 and 56) reported that Sauve exposed his penis to them, with his pants down, and masturbated in their view. Both women were reported to be shocked and upset. Sauve was on probation out of Essex Superior Court at the time on a prior conviction for open and gross.
2. On February 25, 2005, Sauve was convicted in Brighton District Court for open and gross and indecent exposure. He was sentenced to two years, and a six-month concurrent sentence, in the house of correction (both concurrent to the Essex Superior Court sentence). A police report [Ex. 5] discloses that the offenses occurred on July 23, 2004 (three days before the Marblehead offenses), on a bike path in the area of the Northeastern Universiiy boathouse. Sauve was on probation at the time out of Essex Superior Court. Police found Sauve sitting on a bench in his underwear, with his pants in his motor vehicle. Sauve admitted he was “jerking off.” A witness reported that she observed Sauve masturbating two nights in a row as she was on the river in a canoe.
3. On October 24, 2000, Sauve was convicted in Essex Superior Court of two counts of open and gross and one count of indecent exposure. He was sentenced to two years in the house of correction, followed by three years of probation. A police report [Ex. 6] discloses that the offenses occurred on August 9, 2000, at the Beach Club in Swampscott, MA. Two female club employees, both eighteen years old, reported that Sauve stood in the entrance to the men’s locker room, naked, waved a towel to get their attention, and masturbated. Sauve was on probation out of Middlesex Superior Court at the time, on an earlier open and gross conviction.
4. On December 14, 1999, Sauve was convicted in Middlesex Superior Court of open and gross. He received a five-year sentence of probation, was violated on October 24, 2000, and committed for an undisclosed period of time. The conduct appears to have occurred, based on the arraignment date in Malden District Court, on or about March 30, 1999. No police report is in evidence.
5. On August 12, 1992, Sauve was convicted of open and gross and indecent exposure in the Peabody Jury of Six Session. He received a sentence of one year in the house of correction, suspended for two years, on each charge, concurrent with each other. The conduct appears to have occurred, based on the arraignment date in Lynn District Court, on or about July 17, 1991. No police report is in evidence.
6. On March 18, 1991, Sauve was convicted in the Peabody Jury of Six Session of open and gross. He received a one-year house of correction sentence, suspended for three years, which was later turned into a committed sentence upon a violation of probation. According to a police report [Ex. 7], the conduct occurred on October 10, 1990. A female witness (age 67) flagged down a police cruiser and reported that a man (Sauve) was exposing and masturbating himself at the end of the beach.
7. On October 28, 1988, Sauve was convicted of open and gross in Salem District Court, and received a sixty-day sentence, suspended for two years. No police report is in evidence.
8. On August 14, 1987, Sauve was convicted of indecent exposure and received a one-year probationary sentence in the Salem Jury of Six Session. The conduct appears to have occurred, based on the arraignment date in Lynn District Court, on or about July 9, 1986. A later police report [Ex. 7], reflects that this offense occurred at Back Beach in Marblehead, where Sauve’s October 1990 offenses occurred. He received a one-year probationary sentence. No police report of this incident is in evidence.
None of the victims in the above case are reported to have been children. The youngest appear to have been the two eighteen-year-old females employed at the Beach Club. [¶3 above.] In his interview by one of the qualified examiners, Sauve estimated that he had been arrested ten times for exhibitionism, but that he had exposed himself twenty to thirty times beginning at the age of thirteen. [Ex. 11, p. 14.] Sauve, in a report to a qualified examiner, claimed that his youngest victim was sixteen, but that he did not know it at the time. [Ex. 11, p. 14.]
Sauve’s criminal record, beyond the above sex offenses, is fairly unremarkable. His 2000 and 2005 *481 Essex Superior Court open and gross convictions include possession of marijuana convictions as well. He has a conviction for operating to endanger in 1988, and CWOF’s in 1980 and 1978 which were ultimately dismissed. His juvenile record, which included a charge of “lewd and lascivious” in 1974, resulted in three dismissal, and no adjudications. He has no convictions for crimes of violence, and all of his sex offenses can be characterized as “hands-off,” nonviolent, noncontact offenses. None of his sex offenses, as far as the record discloses, involved stalking, luring, approaching, confining, or touching a victim.
DISCUSSION AND RULINGS
The Commonwealth’s burden is to prove beyond a reasonable doubt that Sauve is a sexually dangerous person. G.L.c. 123A, §14(d). As defined in G.L.c. 123A, §1, a sexually dangerous person (“SDP”) is “a person who has been . . . convicted by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility.” “Sexual offense” is a term defined by the statute as any one of a number of specifically listed criminal offenses. G.L.c. 123A, §1.
It is not enough for the Commonwealth to prove, without more, that Sauve was, or is, dangerous generally, or that there is a likelihood of his re-offending sexually or generally. The statute requires that the Commonwealth prove beyond a reasonable doubt that Sauve suffers from a mental abnormality or personality disorder and that, as a result, there is a likelihood that he will re-offend sexually if he is not confined in a secure facility. Mental abnormality is defined as a “congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes that person a menace to the health and safety of other persons.” G.L.c. 123A, §1. A personality disorder is defined as a “congenital or acquired physical or mental condition that results in a general lack of power to control sexual impulses.” Id. In order to find Sauve a sexually dangerous person, the Commonwealth must prove three criteria beyond a reasonable doubt: (1) that Sauve has been convicted of a “sexual offense” as that term is defined by law; (2) that he suffers from a “mental abnormality or personality disorder,” each as defined above; and (3) that the mental abnormality or personality disorder makes him likely to engage in further “sexual offenses” if not confined to a secure facility. G.L.c. 123A, §§1, 14(d). The court will now address each of the required three criteria in turn.
1. First Criterion (conviction)
The court finds the first element to be facially established. Sauve was convicted on January 7, 2005 in Essex Superior Court of “open and gross,” a “sexual offense,” as defined by the SDP statute. G.L.c. 123A, §1. Whether the constitution permits the open and gross offense to trigger a civil conjmitment proceeding to determine sexual dangerousness will be addressed below.
2. Second Criterion (mental abnormality/personality disorder)
With respect to the second element (mental abnormality or personality disorder), the court heard from four different experts, two called by the Commonwealth and two by Sauve. The two “qualified examiners” who evaluated Sauve after the probable cause finding split, one (Dr. Vachher) finding him to meet the criteria of a SDP, and one (Dr. Quinones) finding to the contrary. Both were called by the parties, as was an additional expert (Dr. Daignault) for the Commonwealth and an additional expert (Dr. Bard) for Sauve.[3] The two experts called by the Commonwealth, Drs. Vachher and Daignault, concluded that Sauve suffered from both a statutorily defined mental abnormality (exhibitionism) and a statutorily defined personality disorder (anti-social personality disorder).
The experts called by Sauve concluded that Sauve does not suffer from anti-social personality disorder. One expert, Dr. Quinones, opined that she could diagnose Sauve from a clinical perspective as suffering from a personality disorder, “not otherwise specified,” but concluded that his condition did not meet the statutory definition of a personality disorder. All experts recognized, as does the court, a difference between a clinical diagnosis of a personality disorder (or mental abnormality) and the defined term of personality disorder (or mental abnormality) in the SDP statute. See Commonwealth v. McHoul 372 Mass. 11, 15 (1977) (“The determination of sexual dangerousness is a legal and not a psychiatric question”); Hendricks v. Kansas, 521 U.S. 346, 359 (1997) (court noted that it has “traditionally left to legislators the task of defining terms of a medical nature that have legal significance").
Essentially, the statutoiy definitions require a clinical diagnosis, plus statutorily imposed additional criteria. For a personality disorder to meet the statutory definition, it must first meet the defined clinical characteristics of a personality disorder. Additionally, that disorder must be found to result in a general lack of power to control sexual impulses. In that regard, the court finds persuasive Dr. Quinones’ view, expressed in her written report.
Despite the presence of a clinical personality disorder and although Mr. Sauve’s repeated sexual offenses involving exhibitionism were clearly antisocial, deceitful, and callous, it is my opinion that these elements emerge from a sexual deviance (described further below) as opposed to general personality characteristics evident across diverse settings and life situations. It is also my opinion that Mr. Sauve’s history and current functioning does not support the presence of a statutorily de *482 fined “Personality Disorder” or a “congenital or acquired physical or mental condition that results in a general lack of power to control sexual impulses.” [Ex. 12.)
Given the burden on the Commonwealth, the court finds that it has not been established that Sauve suffers from anti-social personality disorder, as that term is clinically defined. In this court’s view, there is not enough conduct, aside from his sexual offending, to support even a clinical diagnosis that Sauve suffers from anti-social personality disorder. If he did, this court would expect to find a much different and more significant non-sexual criminal record, than is actually the case. However, even if Sauve suffers from a clinically diagnosed personality disorder, the court agrees with Dr. Quinones that it does not rise to the level of a personality disorder as defined in the SDP statute.
The court also finds, as supported by the testimony of all four expert witnesses, that Sauve currently suffers from a mental disorder called exhibitionism.[4] Exhibitionism is defined in the Diagnostic and Statistical Manual of Mental Disorders IV-TR (“DSM-IV-TR”) as:
A. Over a period of at least six months, recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors involving the exposure of one’s genitals to an unsuspecting stranger.
B. The person has acted on these urges, or the sexual urges of fantasies cause marked distress or interpersonal difficulty.
Dr. Quinones’s view of this issue is again persuasive to the court. She stated in her written report: “Mr. Sauve’s behavior has been compulsive and repetitive in that he was unable to control the urge to masturbate in public despite the implementation of external agents of control and support. Consequently, it is my opinion that Mr. Sauve meets clinical diagnostic criteria for Exhibitionism defined in the [DSM-IV-TR].” [Ex. 12.]
Exhibitionism is a clinical diagnosis of a mental disorder and does not supply a direct answer to the question of whether Sauve suffers from a mental abnormality. Put another way, this court must now determine if Sauve’s exhibitionism is a mental abnormality as that term is defined in the SDP statute. Looking closely, the statutory definition can be broken down into the following constituent parts:
1. Congenital or acquired condition;
2. That affects the emotional or volitional capacity of the person; and
3. That predisposes the person to the commission of criminal sexual acts to a degree;
4. That makes the person a menace to the health and safety or other persons.
Exhibitionism is a congenital or acquired condition. Sauve reported that he exposed himself twenty to thirty times beginning at the age of 13. [Ex. 12, p. 15.] It certainly affects his volitional capacity. As noted by Dr. Quinones, he “was unable to control the urge to masturbate in public despite the implementation of external agents of control and support.” [Ex. 12, p. 20.] Sauve’s exhibitionism also predisposes him to future criminal sexual acts, such as indecent exposure and masturbating in public (i.e. “open and gross”). As noted by Dr. Quinones: “Mr. Sauve’s exhibitionism predisposes him toward the ‘commission of criminal sexual acts’ in that he is inclined toward ongoing acts of exhibitionism.” [Ex. 12, p. 21.] The experts were unanimous that Sauve will likely commit similar exhibitionist offenses in the future if he is not confined. For instance, Dr. Quinones stated in her written report: “There have been no significant changes noted during this incarceration and treatment participation to suggest that these behaviors and issues will not again be an ongoing problem should he be released into the community.” [Ex. 12.] The experts all phrased their views somewhat differently, but the court easily finds that Sauve, if not confined, is likely to criminal commit sexual offenses of the sort that he has committed, and been convicted of committing, over the last twenty-some years. Despite convictions, repeated jail sentences, probationary supervision, sex offender treatment, and medications, Sauve has continued to expose himself and masturbate in front of unsuspecting adult strangers. The court finds that it is highly likely that if Sauve is not confined in the future he will commit hands-off, non-contact sex offenses involving exposing himself and masturbating in front of unsuspecting strangers. However, the court accepts the views of Dr. Quinones,Dr. Bard, and Dr. Vachher, and does not find that his past history of non-contact offending will escalate into contact, violent sexual offenses. The court also concludes that the record does not support a finding Suave’s likely future sexual offending will involve children victims.
That leaves one very contested part of the definition of mental abnormality: the predisposition (to commit criminal sexual acts) must be to a degree that “makes that person a menace to the health and safety or other persons.” The court disagrees with Dr. Bard that the words “to a degree” are a reference to or some limitation on the type of criminal sexual act that could make a person a menace to the health and safety of other persons. Rather, the court reads the words “to a degree” to modify and qualify the word “predisposes,” and to mean that the person’s predisposition to commit criminal sexual acts must be significant enough to menace the health and safety of other persons. Sauve certainly has a strong predisposition to commit future criminal acts of exhibitionism. Whether that predisposition makes him a menace to the health and safety of others is a much closer question.[5]
*483 The initial answer to that question is in the affirmative, and the court finds support for that conclusion in Commonwealth v. Kessler, 442 Mass. 770 (2004). In Kessler, the Court, in a sufficiency of evidence challenge, compared the crimes of indecent exposure and open and gross as follows.
Being “excited” or “nervous” may sometimes be unpleasant, but it does not connote the serious negative emotional experience required by the [open and gross] statute . . . Indeed, the presence of “alarm or shock” is what distinguishes the open and gross offense from the indecent exposure offense. (Citation omitted.) Open and gross lewdness is a felony punishable by up to three years in State prison, while indecent exposure is a misdemeanor carrying a sentence of up to six months in a jail or house of correction . . . (Citations and blurbs omitted.) In all these cases, the observer suffered significant negative emotions as a result of the exposure; thus his or her reaction could justifiably be deemed alarm or shock.
Id. at 774-75 (emphasis added). Given that Sauve has seven open and gross convictions and is likely to commit open and gross offenses in the future (unless confined in a secure facility), and open and gross, according to the Supreme Judicial Court, requires that the observer/victim suffer significant negative emotions, this court finds, as an initial matter, that Sauve’s strong predisposition to commit open and gross offenses in the future makes him a menace to the health (i.e. emotional health) of other persons. The court finds that significant negative emotions are an injury or constitute harm to the emotional health of others, making Sauve a menace to the health of other persons under a plain reading of the SDP statute. See McHouf Petitioner, 445 Mass, at 154-55 (“The definition of ‘injury’ is not limited to physical harm . . . and includes psychological, mental, or emotional trauma”).
The court has qualified its ruling as an “initial one” because Sauve has raised through his motion for directed verdict two issues reserved by the Supreme Judicial Court in Commonwealth v. Grant, 455 Mass. 1022 (2010). In that case, the Court reserved, and Sauve herein raises, two issues: (1) whether G.L.c. 123A, properly construed, permits a finding of sexual dangerousness based on an individual’s history of committing non-contact sexual offenses and his likelihood of committing only non-contact offenses in the future; and (2) whether the statute, if construed to permit such a result, would pass constitutional muster. Id. at 1023-24. Before reaching those issues, the court will turn to the third criterion, which raises the same construction and constitutional issues reserved in Grant.
3. Third Criterion (likelihood to engage in further “sexual offenses”)
The third criterion to support a finding that a person is a SDP is that the previously convicted person suffers from a mental abnormality or personality disorder which “makes the person likely to engage in sexual offenses if not confined to a secure facility.”[6] Setting aside the construction and constitutional issues reserved with respect to the first two criteria, and assuming for initial consideration of this third criterion that Sauve suffers from a statutorily defined mental abnormality, the answer to this determination is also initially in the affirmative. The record is overwhelming that Sauve is likely, based on his exhibitionism, to engage in open and gross conduct in the future if not confined. The Legislature has defined the term “sexual offense” to include the crime of open and gross lewdness. G.L.c. 123A, §1. Thus, as an initial matter, this court finds that Sauve is likely to engage in a defined “sexual offense” if not confined in a secure facility. As above, this is only an initial ruling because the two issues reserved by the Supreme Judicial Court in Grant are applicable to this third criterion, as they are with respect to the first two criteria.
4. Issues Reserved in Grant
Grant, 455 Mass. 1022, was before the Supreme Judicial Court on the defendant’s application for further appellate review after an unfavorable ruling by the Massachusetts Appeals Court. See Commonwealth v. Grant, 73 Mass.App.Ct. 471 (2009). The facts in Grant and the facts found by this court are very similar. In Grant, “[including [a] juvenile offense, the defendant has been convicted of [open and gross] eleven times, each time for exposing himself and at times for masturbating in public ... As an adult, he has been convicted of no crime other than open and gross lewdness . . . the victims of the defendant’s offenses were females ranging in age from twelve to fifty-one.” Grant, 73 Mass.App.Ct. at 472. All five experts who testified at the trial in Grant agreed that the defendant suffered from what would clinically be diagnosed as exhibitionism. As is the case here, the experts disagreed whether exhibitionism, coupled with an undisputed likelihood of future crimes of exhibitionism, rose to the level of a mental abnormality (i.e. made the defendant a menace to the health and safety of others). The trial judge, in a jury waived trial, “in large part, adopted the opinion of the defense experts, ruling that the defendant was not a sexually dangerous person because the Commonwealth could not meet its burden of proving the defendant’s danger to the public where the defendant’s only offenses were non-contact offenses.” Grant, 73 Mass.App.Ct. at 477.
The Appeals Court in Grant vacated the trial court’s judgment, holding that sexual dangerousness includes psychological, mental, and emotional injury, and that “the Legislature ‘made no statutory distinction between classes of injuries likely to be inflicted on future potential victims if the [defendant] were released into the community.’ ” Id. at 477-78, quoting McHoul, Petitioner, 445 Mass. 143, 155 (2005). The Appeals Court concluded that “the Legislature clearly intended sexually dangerous persons to include those who commit only noncontact offenses.” Id. at 478. If *484 the Appeals Court had the last word in Grant, its decision would control this case and this court would find that the Commonwealth has met its burden to prove that Sauve is a SDP. But that is not the case. The Supreme Judicial Court has spoken, even if only in dicta.
Both questions reserved by the Supreme Judicial Court in Grant specifically relate to the first and third criteria to support a finding that a person is a SDP. The first reserved question asks whether the SDP statute, “properly construed,” permits a SDP finding based only on noncontact offenses, both as to the individual’s past history of sexual offending, and his future likelihood of committing only noncontact offenses. The second reserved question asks whether, if the first question is answered affirmatively, such a construction passes constitutional muster.
Although the first reserved question’s reference to “properly construed” invites a construction to avoid constitutional problems, it is not feasible to do so in this case given the specific statutory definition of the term “sexual offense” that is part of the first and third criteria for a SDP finding.[7] See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council, 485 U.S. 568, 575 (1988) (“where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress”). The only way to avoid constitutional problems in this case would be to rewrite the statutory definition of “sexual offenses” to delete the noncontact open and gross offense. The doctrine of constitutional avoidance encourages “every reasonable construction in order to save a statute from unconstitutionality.’’ Id., quoting Hooper v. California, 155 U.S. 648, 657 (1895). It does not permit a court to rewrite legislation.
Thus, this court answers the first question reserved in Grant affirmatively. That is, properly construed, in accordance with Legislative intent and the plain meaning of defined terms, the SDP statute permits a SDP finding based only on open and gross offenses, both as to the individual’s past history of sexual offending and as to his future likelihood of committing those same lype of offenses. Accordingly, the second reserved question must be reached: does such a construction pass constitutional muster? The answer to that question is found in the United States Supreme Court cases cited by the Supreme Judicial Court in Grant. See Kansas v. Crane, 534 U.S. 407 (2002); Kansas v. Hendricks, 521 U.S. 346 (1997).
The Court in Hendricks reviewed the Kansas Sexually Violent Predator Act, “which establishes procedures for the civil commitment of persons who, due to a ‘mental abnormaliiy’ or a ‘personality disorder,’ are likely to engage in predatory acts of sexual violence.” Hendricks, 521 U.S. at 350. The Massachusetts SDP statute is remarkably, and certainly intentionally, similar to the Kansas statute. The Massachusetts statute was enacted on September 10, 1999, St. 1999, c. 74, §§3-8, more than two years after Hendricks was decided, and after aperiod of almost ten years duringwhich the former SDP statute was not in effect. See Commonwealth v. Bruno, 432 Mass. 489, 494 (2000) (overview of G.L.c. 123A, as amended in 1999). The differences between the statutes, at least with respect to the definitions of a SDP and a sexually violent predator appear insignificant to this court. Massachusetts entitled its SDP statute “Care, Treatment and Rehabilitation of Sexually Dangerous Persons” and uses the defined term “sexual offenses.” Kansas entitled its statute “Sexually Violent Predator Act” and uses the terms “sexual violent offense” and “predatory acts of sexual violence.” However, the use of the “violent predator” language, as opposed to merely “sexually dangerous/sexual offense” language is largely if not entirely immaterial for comparison purposes between the Kansas statute and the original 1999 enactment of the Massachusetts statute. When enacted as amendments in 1999, the Massachusetts definition of “sexual offenses” that triggered/permitted commencement of SDP proceedings (the first criterion) and also was part of the third criterion for a finding of SDP (likelihood of engaging in sexual offenses fn future), was limited to violent, contact sexual offenses such as indecent assault and battery, rape, and similar offenses, as well as attempts to commit such offenses. Because Massachusetts limited its definition of sexual offenses to violent sexual offenses, the Massachusetts definition of a SDP that took effect in 1999 was nearly identical to the Kansas definition of a sexually violent predator that the Supreme Court upheld against a substantive due process challenge. See Hendricks, 521 U.S. at 352 (quoting Kansas’s definition of “sexually violent predator” and “mental abnormality”); see also Bruno, 432 Mass, at 499 (in Hendricks, Supreme Court “upheld as constitutional the Sexually Violent Predator Act . . . which contains many provisions similar to those in c. 123A”).
In this court’s view, the rationale and holding of Hendricks are equally applicable to the Massachusetts SDP statute as it was amended in 1999. However, in 2004, the Massachusetts Legislature amended the definition of “sexual offense” in G.L.c. 123A, §1 in a way that materially distinguishes the current version of the statute from the Kansas statute upheld in Hendricks. Whereas the earlier version of the Massachusetts statute limited “sexual offenses” to violent sexual offenses that could be described as predatory, the amendment added a number of new sexual offenses, some of which involved contact/violence, but others of which did not. Open and gross lewdness was added, as were a number of offenses involving child pornography, including possession of child pornography, as well as other offenses.[8]
Hendricks dealt with a statute that permitted an individual to be civilly committed as a SDP only upon a finding that a mental abnormality or personality disorder made the person, previously convicted or charged with a sexually violent offense, likely to engage in pred- *485 atoiy acts of sexual violence. Here, the Commonwealth seeks to have Sauve found to be a SDP, as this court has ruled the statute would facially permit, based not on a past sexually violent offense and a likelihood of future predatory acts of sexual violence, but on past and likely future noncontact acts of open and gross lewdness. The question is whether the rationale and holding of Hendricks permits Sauve, consistently with substantive due process rights, to be civilly committed as a SDP based on past and likely future open and gross lewdness involving masturbating in public.[9]
Although the Legislature has defined sexual offenses to include open and gross lewdness, the crime is not one of sexual violence. It also, in this court’s view, does not present dangerousness to the public in the same sense as contact/violent sexual offenses such as indecent assault and battery and rape.[10] The elements of open and gross include no requirement of a touching. Open and gross conduct is certainly un-welcomed, offensive, and criminal, but it is not violent as that term is generally understood. Open and gross is punishable by up to three years in state prison, whereas indecent assault and batteiy on a person over fourteen years of age is punishable by up to five years in state prison. G.L.c. 265, §13H. It is clear to this court that sexual violence was a necessary part of the statute that the Supreme Court upheld in Hendricks against a substantive due process challenge. The Court noted that the Kansas statute includes a preamble in which it was explained: “[A] small but extremely dangerous group of sexually violent predators exist ...” The Kansas statute defines both mental abnormaliiy and sexual dangerousness as involving sexual violence. In upholding the statue against the due process challenge, the Court stated: “it thus cannot be said that the involuntary civil confinement of a limited subclass of dangerous persons is contrary to our understanding of ordered liberty.”[11] Id. at 357. The Court went on to state: “The statute thus requires proof of more than a mere predisposition to violence; rather, it requires evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated.” Id. at 357 (emphasis added). Throughout the Hendricks opinion, the Court refers to the requirement of dangerousness and dangerous behavior, and assumes such to be the case, all in the context of a statute that spoke exclusively in terms of sexually violent offenses and predatory acts of sexual violence. Id. at 357, 358, 360. In this court’s view, the Hendricks court would not have upheld a statute that permitted an open and gross conviction to commence a SDP proceeding, and the likelihood of future open and gross offenses to support a SDP finding.[12] Dangerousness and sexual violence are simply too interwoven into the fabric of the Court’s opinion in Hendricks for this court to conclude that Massachusetts can, consistently with substantive due process under the United States Constitution, commence a SDP proceeding and civilly commit Sauve to an indeterminate period, up to and including the length of his life.
The court is not persuaded by the Commonwealth’s reliance on the federal counterpart to the Commonwealth’s SDP statute, the Adam Walsh Child Protection and Safety Act of 2006. The portion of the Adam Walsh Act that provides for the civil commitment of sexually dangerous persons is entitled as the Jimmy Ryce Civil Commitment Program (the “Federal Act”). 18 U.S.C. §4248. Under the Federal Act, a sexually dangerous person is defined as one who “has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others.” 18 U.S.C. §4247(a)(5). A person is “sexually dangerous to others” if the person “suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released.” 18 U.S.C. §4247(a)(6). The statute does not define the terms “sexually violent conduct” or “child molestation.” United States v. Shields, 522 F.Sup.2d 317, 323-24 (D.Mass. 2007).
The Commonwealth is correct in claiming that the United States Supreme Court has upheld the constitutionality of the Federal Act. United States v. Comstock, 130 S.Ct. 1949 (2010). However, the only issue reached by the Supreme Court was whether the Federal Act exceeded Congress’s legislative authority under Article I of the United States Constitution. The case was before the Supreme Court on motions to dismiss filed in the United States District Court for the Eastern District of North Carolina by five separate respondents, which had been'granted by the district court and affirmed by the Court of Appeals for the Fourth Circuit, which agreed with the district court that the federal Act exceeded Congress’ Article I legislative powers. The cases were never adjudicated on the merits, so the bases for the claims of sexual dangerousness were never established and were not before the Supreme Court. Thus, Comstock says nothing about whether the use of the Federal Act on facts similar to those before this court would survive a Hendricks-type substantive due process challenge such as is advanced by Sauve before this court.
ORDER FOR JUDGMENT
Sauve’s motion for directed verdict is ALLOWED. The Commonwealth has not met its burden to establish Sauve as a sexually dangerous person in a constitutionally permissible manner. Accordingly, judgment shall enter in favor of respondent Donald Sauve, dismissing the petition before this court.

 G.L.c. 272, §16 criminalizes “open and gross lewdness and lascivious behavior” (“open and gross”). The Supreme Judicial Court has recognized the following five elements of the crime: (1) that the defendant exposed his genitals to one or more persons; (2) that the defendant did so intentionally; (3) that the defendant did so openly, that is, either he intended public exposure, or he recklessly disregarded a substantial *486 risk of public exposure, to others who might be offended by such conduct; (4) that the defendant’s act was done in such a way as to produce alarm or shock; and (5) that one or more persons were in fact alarmed or shocked by the defendant exposing himself. Commonwealth v. Kessler, 442 Mass. 770, 773, n.4 (2004), citing Model Jury Instructions for Use in the District Court, Instruction 5.42 (1988). The crime of open and gross requires something more than offensive behavior. ”[T]he presence of ‘alarm or shock’ is what distinguishes the open and gross offense from the indecent exposure offense.” Kessler, 442 Mass, at 774.

 Open and gross is a felony, punishable by up to three years in state prison. G.L.c. 272, §16.

 The qualifications of each expert, except Dr. Vachher, were stipulated to. Each was a clinical and forensic psychologist. Additionally, the report of each expert, including that of Dr. Vachher, was introduced by agreement into evidence. [Exs. 9, 10, 11, 12, 14, and 15.] Sauve moved for avoir dire and to exclude Dr. Vachher. [D. 19.] The court, after voir dire, reserved on Sauve’s motion to exclude Dr. Vachher’s testimony, and permitted her to testify as to her opinions. The court now denies Sauve’s motion and accepts Dr. Vachher as qualified to testify in this matter.

 Exhibitionism is a paraphilia. A paraphilia is a sexual deviancy characterized by “recurrent, intense sexual urges, fantasies, or behaviors that involve unusual objects, activities, or situations and cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.” DSM-IV-TR.

 In considering this issue, the court starts with a working definition of menace as follows: la. threat; lb. the act of threatening; 2. a troublesome or annoying person. The American Heritage Dictionary of the English Language, New College Edition (1979).

 There is a significant overlap between the second and third criteria in this case, where only mental abnormality is arguably present. The second is phrased in terms of predisposition to commit certain acts, while the third is phrased in term of a likelihood to commit certain offences. Although predisposition and likelihood appear to be two different ways of saying the same thing, the second and third criteria contain important differences. The second criterion speaks in term of a predisposition to commit “criminal sexual acts,” a term not defined by the SDP statute. The third criterion speaks in terms of the likelihood to commit “sexual offenses,” a term defined by the SDP statute. It is also a term that was greatly expanded by 2004 amendments to the SDP statute, as discussed further below. St. 2004, c. 66, §§3-6.

 That is not the case with the mental abnormality element, which requires, in part, a predisposition to the commission of “criminal sexual acts,” an undefined term. The court could perhaps construe that term, in order to avoid a constitutional problem, to be limited to violent criminal sexual acts, but it is not necessary to do so, given the ruling by this court with respect to the first and third criteria.

 The new offenses added to the definition of “sexual offenses” were: kidnapping under Section 26 of said chapter 265 with intent to commit a violation of Section 13B, 13F, 13H, 22, 22A, 23, 24 or 24B of said chapter 265; enticing away a person for prostitution or sexual intercourse under Section 2 of chapter 272; inducing a person under 18 into prostitution under Section 4A of said chapter 272; living off or sharing earnings of a minor prostitute under Section 4B of said chapter 272; open and gross lewdness and lascivious behavior under Section 16 of said chapter 272; incestuous intercourse under Section 17 of said chapter 272 involving a person under the age of 21; dissemination or possession with the intent to disseminate to a minor matter harmful to a minor under Section 28 of said chapter 272; posing or exhibiting a child in a state of nudify under Section 29A of said chapter 272; dissemination of visual material of a child in a state of nudify or sexual conduct under Section 29B of said chapter 272; purchase or possession of visual material of a child depicted in sexual conduct under Section 29C of said chapter 272; dissemination of visual material of a child in the state of nudify or in sexual conduct under Section 30D of chapter 272; accosting or annoying persons of the opposite sex and lewd, wanton, and lascivious speech or behavior under Section 53 of said chapter 272; any other offense, the facts of which, under the totality of circumstances, manifest a sexual motivation or pattern of conduct or series of acts of sexually-motivated offenses. St. 2004, c. 66, §§3-6.

 This court’s ruling is limited to the facts of this case, and the past and likely future commitment by Sauve of open and gross offenses.

 The court has already found Sauve dangerous in the sense that he is predisposed to be a menace to the emotional health of likely future victims of his exhibitionism. He is dangerous to the health of others to a similar extent that an unarmed bank robber, likely to reoffend, is a danger to bank tellers, who can also suffer emotional injury from a bank robbery. Yet no one would suggest civil confinement of a bank robber who, due to substance abuse or mental health issues, is likely to reoffend. To be consistent with substantive due process rights, SDP civil confinement procedures should be limited to that small subclass of truly dangerous sexual offenders, where the price of reoffending is simply too high for society to bear. That is not the case with Sauve and his likely future acts of exhibitionism. Moreover, the Court in Hendricks recognized that some dangerous persons could be more properly dealt with exclusively through criminal proceedings. Hendricks, 521 U.S. at 360. In fact, the Court in Crane emphasized the constitutional importance of “distinguishing a dangerous sexual offender subject to civil commitment ‘from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings.’ ” Crane, 534 U.S. at 412, quoting Hendricks, 521 U.S. at 360. “That distinction is necessary lest ‘civil commitment’ become a ‘mechanism for retribution or general deterrence’— functions properly those of criminal law, not civil commitment.” Crane, 534 U.S. at 412, quoting Hendricks, 521 U.S. at 372-73 (Kennedy, J. concurring). If Sauve offends again as he has in the past and is convicted of open and gross, he faces up to three years in state prison for each victim of that conduct.

 Phrased in similar terms, this court cannot say in this case what the Court said in Hendricks. That is, in this court’s view, the involuntary civil confinement of Sauve (who has never committed a contact/violent sexual offense, and is not likely to do so in the future) as a SDP is contrary to our understanding of ordered liberty.

 Justice Thomas wrote the opinion for the Court in Hendricks, in which Justice Scalia joined. In Crane, Justice Scalia dissented, in which Justice Thomas joined. The dissent was based on the belief that the Court had backtracked from its decision in Hendricks and imposed on the Kansas SDP statute an element not included in the statute. It is worth noting that the defendant in Crane suffered from, according to several psychologists, exhibitionism and antisocial personality disorder. Justice Scalia wrote: “Several psychologists examined respondent and determined he suffers from exhibitionism and antisocial personality disorder. Though exhibitionism alone would not support a classification as a sexual predator, a psychologist concluded that the two in combination did place respondent’s condition within the range of disorders covered by (the Kansas statute].” Crane, 534 U.S. at 416-17 (Scalia, J. dissenting) (emphasis added). In this case we have exhibitionism alone, supporting both the past sexual offending and the likely future sexual offending.