COMMONWEALTH *vs.* GUY G., a juvenile.

No. 99-P-2074.

Plymouth. September 11, 2001. - November 23, 2001.

Present: LENK, KAPLAN, & DOERFER, JJ.

*Lewdness. Practice, Criminal,* Instructions to jury, Sentence, New trial. *Delinquent Child.*

At the trial of a juvenile on charges of "open and gross lewdness and lascivious behavior" under G. L. c. 272, § 16, and of being a lewd, wanton and lascivious person in "speech or behavior" under G. L..c. 272, § 53, there was sufficient proof of both "alarm or shock" as required by the fourth and fifth elements of the § 16 offense appearing in instruction 5.42 of the Model Jury Instructions for Use in the District Court (1995), and the "public place" requirement of the fourth element of the § 53 offense appearing in the applicable model instruction 5.422. [273-275]

In the circumstances, this court remanded a matter to the Juvenile Court for a ruling on a motion pursuant to Mass.R.Crim.P. 25(b)(2), seeking to reduce an adjudication of delinquency on a charge of "open and gross lewdness and lascivious behavior" under G. L. c. 272, § 16, to indecent exposure, the purpose of which was to avoid the alleged injustice of requiring the juvenile to register under the Sex Offender Registration and Community Notification Act, G. L. c. 6, § 178C; further, on the charge of violating G. L. c. 272, § 53, by being a lewd, wanton and lascivious person in "speech or behavior," the adjudication of delinquency was affirmed. [275-278]

COMPLAINT received and sworn to in the Plymouth Division of the Juvenile Court Department on April 22, 1997.

The case was tried in the Brockton Division before *John P. Corbett,* J., and a motion for a new trial was heard by him.

*Michael J. Conley* for the juvenile.

*Christine M. Kiggen,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. In Brockton Juvenile Court a six-person jury found the juvenile defendant, Guy G. (a pseudonym), delinquent for his violation, first, of G. L. c. 272, § 16 ("open and gross lewdness

and lascivious behavior") (as appearing in St. 1987, c. 43), and, second, of a provision of G. L. c. 272, § 53 ("lewd, wanton and lascivious persons in speech or behavior") (as appearing in St. 1983, c. 66, § 1). The juvenile noted his appeal from the delinquency convictions and the denial of his motion for a new trial, claiming the prosecution failed for want of evidence in certain particulars. He also appealed from the (presumed) denial of his motion pursuant to Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), to set aside the verdict on the § 16 offense and enter a finding of delinquency of the included offense of "indecent exposure" (also set out in § 53).

It will be convenient to describe the case as the jury could find it, then to consider the supposed material gaps in the evidence, and finally to examine the handling of the rule 25(b)(2) motion to reduce the delinquency. We shall conclude that the verdicts were fully supported, but there is a need in the interests of justice to remit the case to the trial judge so he may pass anew on the motion in his discretion.

1. On December 19, 1996, Guy and the complaining witness, Carol Denver (a pseudonym), were both aged sixteen and in the junior grade of the Whitman-Hanson Regional High School in Hanson. That morning, the school was in session. Under a program of remedial tutoring by student peers, Denver was trying to assist Guy in a history assignment. They were seated in one of the cubicles to the side of study room no. 25. The cubicles were partitioned for privacy but were not closed and could be readily entered. Two students were at tables in the area outside the cubicles. One, Chris, could, if he rose, see over the partition and into the cubicle. Four or five students were in the adjoining room no. 23. A teacher would "rotate" between the two rooms.

Denver had been coaching Guy at times since mid-November and had had some trouble with him.[1] On this occasion, Guy refused to concentrate on the work and began making passes at Denver. He said she was cute; could she come home with him and play with him; if she "play[ed] with his dick," he would offer her marijuana or CDs, otherwise he might give her a "titty-

---

[1]Denver had spoken to two faculty persons about Guy's lying to her.

twister." He put his hand on her skirt at her thigh, tried to take her hand. She felt "totally uncomfortable," she "blew him off," and said she would scream if he didn't leave her alone. She quit the cubicle and sat down beside Chris, whom she knew, and conversed with him.[2] Denver testified she was trying to cool off and relax and control herself. She had not intended to go back to Guy but did so when John Dehan, an adjustment counselor, entered from the adjacent room 23 and indicated she should go on with her work.

As Denver returned to the cubicle, Guy resumed his advances. He said he hated to see sixteen-year-old girls with flat chests and tried to throw some pens down her shirt. Then he leaned back in his swivel chair, pulled up his shirt, lowered his low-slung baggy pants and his shorts, and exposed his penis to her, saying, "Isn't that the biggest you've ever seen." After a few moments he pulled back his shorts. She told him he was "disgusting" and to "grow up," and she left. She testified she was "in shock," "didn't know what to think," was "upset" by ·it, "angry, . . . sad," with "a lot of emotions." She had not mentioned her trouble to Chris, was "too in shock" to try to tell him.

Denver's subsequent complaints to Dehan and Edwin Walsh, an assistant principal, led to a meeting of these teachers with Guy, followed by police intervention.[3]

2. The five elements of the § 16 offense appear in instruction 5.42 of the Model Jury Instructions for Use in the District Court

---

[2]During this interval Denver wrote a note addressed to a friend complaining that "this psycho kid [Guy] won't stop hitting on me. I don't know what to do." She went on to describe Guy's behavior in the cubicle. She passed the letter to the friend later that day. (In testimony, Denver defined the "hitting on" expression to mean Guy's taking an interest in her which she did not reciprocate.)

[3]For the defense, Guy testified he was trying to mend his pants belt with tape at the time; he might accidentally have exposed himself in the process (he thought he had not) but he pictured Denver as somnolent or asleep in her chair and so probably not aware. The other witness called by the defense, Patricia Leverone, a special needs teacher, uncertain about the date, recalled seeing Guy holding up his pants with both hands. She told him to seek a pin (he didn't do so).

(1995), reproduced in the margin.[4] The judge instructed the jury accordingly. The juvenile contends there was insufficient proof of the "alarm or shock" of the fourth and fifth elements, a necessary part of the crime. See *Commonwealth* v. *Fitta*, 391 Mass. 394, 396 (1984); *Commonwealth* v. *Gray*, 40 Mass. App. Ct. 901, 901 (1996); *Commonwealth* v. *Poillucci*, 46 Mass. App. Ct. 300, 302 (1999). Denver's testimony about her reaction to the genital exposure, read in the context of the entire encounter, furnishes proof of alarm and shock for the jury's appreciation, and there is little need to invoke the proposition that on appeal after a delinquency finding, the evidence is taken with intendments favoring the Commonwealth. That Denver did not report or protest instantly to Chris (or to a teacher) was due, she testified, to her being "too in shock." The point goes at most to her credibility, and so for consideration by the jury.

Again, the juvenile argues that the proof of the § 53 offense did not measure up because the genital act was not committed in a "public place," referring here to the fourth element of the applicable model instruction 5.422.[5] As long recognized, and reflected in the jury instruction, the public place issue is not a

---

[4][Preamble omitted.]

"In order to prove the defendant guilty of this offense, the Commonwealth must prove five things beyond a reasonable doubt:

"First: That the defendant exposed his (her) (genitals) (buttocks) (or) (female breasts) to one or more persons;

"Second: That the defendant did so intentionally;

"Third: That the defendant did so 'openly,' that is, either he (she) intended public exposure, or he (she) recklessly ·disregarded a substantial risk of public exposure, to others who might be offended by such conduct;

"Fourth: That the defendant's act was done in such a way as to produce alarm or shock; and

"Fifth: That one or more persons were in fact alarmed or shocked by the defendant's thus exposing himself (herself)."

[5][Preamble omitted.]

"In order to prove the defendant guilty of this offense, the Commonwealth must prove four things beyond a reasonable doubt:

"First: That the defendant (committed) (publicly solicited another person to commit) a sexual act;

"Second: That the sexual act involved touching the genitals or buttocks, or the female breasts;

"Third: That the defendant did this either for the purpose of sexual arousal or gratification, or for the purpose of offending other people; and

matter of characterizing a location as intrinsically public or private; the question rather is whether the actor in the given circumstances was being recklessly indifferent to a substantial chance that others would observe the act and might be offended by the sight. See *Commonwealth* v. *Ferguson,* 384 Mass. 13, 15-19 (1981); *Commonwealth* v. *Beauchemin,* 410 Mass. 181, 183-184 (1991); *Commonwealth* v. *Roy,* 420 Mass. 1, 3-4 (1995); *Commonwealth* v. *Kelley,* 25 Mass. App. Ct. 180, 183-185 (1987). (The Model Penal Code sees statutes such as our § 53 as designed "to protect against the open flouting of community standards regarding sexual or related matters." Model Penal Code § 251.1, explanatory note, at 196 [1985].) The testimony relevant to public place raised a question for the jury properly instructed. In fact, the defendant himself on cross-examination testified that "teachers . . . come in every now and then and check [up]" and it was "not uncommon for . . . someone [to] come[] in to see what you're doing."

3. On the § 16 offense, the judge imposed sentence to the Department of Youth Services (DYS) suspended to July 9, 1999 (the juvenile's eighteenth birthday), with probation on stated terms of counseling, and so forth. The sentence noted that the § 16 delinquency (a felony) subjected the juvenile to registration under the Sex Offender Registration and Community Notification Act, G. L. c. 6, § 178C.[6]

At the hearing (January 15, 1998) on the motion for a new trial,[7] counsel for the juvenile stated candidly he was not so much interested in a new trial as in persuading the judge to al-

---

"Fourth: That the sexual act (was) (was to be) committed in a public place; that is, a place where the defendant either intended public exposure, or recklessly disregarded a substantial risk of public exposure at that time and under those circumstances, to others who might be offended by such conduct."

[6]At the time, § 178C (as inserted by St. 1996, c. 239, § 1) listed "open and gross lewdness and lascivious behavior under the provisions of [c. 272, § 16,]" among the sex offenses invoking registration. (We do not enter upon the attendant ramifications of due process, see *Doe* v. *Attorney Gen.,* 430 Mass. 155 [1999].) The legislation effective on September 10, 1999, St. 1999, c. 74, § 2, has (as part of a general revision of the law) replaced the quoted language by "second and subsequent adjudication or conviction for open and gross lewdness and lascivious behavior under [c. 272, § 16], but excluding a first or single adjudication as a delinquent juvenile before August 1, 1992."

[7]A motion to revise and revoke had been earlier formally made and denied.

low a motion pursuant to Mass.R.Crim.P. 25(b)(2)[8] to reduce the delinquency to indecent exposure. The practical effect would be to leave the terms of the sentence intact, but to remove the occasion for the requirement of registration.

The judge had discretion under the rule to "ameliorate injustice," *Commonwealth* v. *Woodward*, 427 Mass. 659, 667 (1998), and counsel for the juvenile argued that favorable action on the motion would have just such an effect.[9] It was, in the first place, a consequence of the felony-level delinquency that the Plymouth public school claimed the right to exclude the juvenile, see G. L. c. 71, § 37H½(2) (counsel was considering an appeal under the statute to the superintendent). Thus the juvenile, suffering from attention deficit and hyperactivity disorders, would be left to the educational opportunities that could be provided by the DYS. The court clinic, said counsel, had reported that what the juvenile needed was the social structure of a regular school environment and the development of social skills that would avert for the future any incidents such as the one for which he was prosecuted. Further, the clinic had reported the juvenile was not a sexual predator and was not at risk to become a psychopath. Counsel was asking the court to consider the injustice of laying an obloquy of registration on a sixteen year old for the single dereliction.

The trial judge made no comment about the merits and justice of the juvenile's request for reduction; rather, he expressed doubt whether he had authority to pass on the request. He said, even if indecent exposure was an included offense, "which I

---

[8]Rule 25(b)(2) provides:

"*Motion After Discharge of Jury*. If the motion [for a required finding of not guilty] is denied and the case is submitted to the jury, the motion may be renewed within five days after the jury is discharged and may include in the alternative a motion for a new trial. If a verdict of guilty is returned, the judge may on motion set aside the verdict and order a new trial, or order the entry of a finding of not guilty, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint."

[9]The Commonwealth took no objection to the informality of the representations made by counsel.

don't know if it is"[10] — a doubt then shared by the Commonwealth — he had not been asked to instruct the jury on indecent exposure and he doubted he was free to impose a sentence on that offense when the jury could not have considered it or rendered a verdict upon it. The juvenile's counsel said a trial judge in Superior Court had recently (actually it was in November, 1997) acted in discretion to reduce a conviction of murder in the second degree to a conviction of the lesser offense of involuntary manslaughter, even though he had not put any question to the jury about manslaughter.[11] Responding to counsel, the judge said he was not sure the judge's action in the cited instance was "right."

It was not until October 2, 1998, that the judge ruled, inscribing on the margin of the paper motion for a new trial, "After hearing and consideration of materials submitted the motion is denied." The judge's attention seemed trained on the question of a new trial. Surely the judge was not allowing the request for reduction, and it may be presumed denied and subject to appeal, but he did not mention the request, and we find no clearcut disposition or reasoning on the matter. We do not know whether he overcame his doubt about his power or did in fact consider the request.

On the present appeal, it must be taken as settled that there was no bar to the judge's entertaining and passing on the reduction request by reason of the omission to instruct the jury on the lesser offense. See *Commonwealth* v. *Woodward*, 427 Mass. at 662-667,[12] and the Commonwealth in its brief appears not to dispute the proposition that the indecent exposure of § 53 is an

---

[10]The judge also said, "The rule says that I can reduce the case to any offense included within the complaint, and this wasn't included within the complaint."

[11]This occurred in the Louise Woodward au pair case, which reached final decision in *Commonwealth* v. *Woodward*, 427 Mass. 659 (1998).

[12]In the *Woodward* case, the Commonwealth had requested an instruction on involuntary manslaughter, with the defense opposed; the judge did not so instruct. The Court held this was error but the judge nevertheless could act in discretion under rule 25(b)(2) to reduce the conviction. *Id.* at 662-667.

included offense of the § 16 charge within the meaning of the second sentence of rule 25(b)(2) (see note 8, *supra*).[13]

The Commonwealth argues that the request for reduction came too late, that it had to be made within the five days mentioned in the first sentence of rule 25(b)(2). The law is otherwise: the five-day limit does not apply to applications under the second sentence; these are without limit of time in the same sense as motions for a new trial under Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979) (see now 435 Mass. 1501 [2001]). See *Commonwealth* v. *Keough*, 385 Mass. 314, 318 (1982); *Commonwealth* v. *Aguiar*, 400 Mass. 508, 511 n.3 (1987); *Commonwealth* v. *Carter*, 423 Mass. 506, 511 n.6 (1996). The request was timely.

The juvenile urges us to act to allow the motion in order to repair an injustice. The Commonwealth seems content that injustice was not done. But the discretion involved, to be carefully and sparingly exercised, is in the first instance for the trial judge.

In all the circumstances, the indicated course is to remand the case to the trial judge to revisit the scene and consider and decide the rule 25(b)(2) motion as applied to the § 16 delinquency. Accordingly, on the charge of violation of G. L. c. 272, § 16, the matter is remanded to the Juvenile Court for a ruling on the motion pursuant to Mass.R.Crim.P. 25(b)(2). On the charge of violation of G. L. c. 272, § 53 ("lewd . . . persons in speech or behavior"), the adjudication of delinquency is affirmed. The order denying the motion for a new trial is affirmed.

*So ordered.*

---

[13]It has long been stated that the § 16 offense is an aggravated form of indecent exposure, the § 16 offense being often charged where the victim is a child, although not thus limited. See the explanatory note to instruction 5.423 of the Model Jury Instructions for Use in the District Courts (1995) on indecent exposure; *Commonwealth* v. *Fitta*, 391 Mass. 394, 396 (1984) (quoting from *Commonwealth* v. *Broadland*, 315 Mass. 20, 22 [1943], that "[t]he 'open and gross lewdness' provision has been said to be 'closely similar' to the offense of indecent exposure'").