## COMMONWEALTH *vs.* MICHAEL KESSLER.

Barnstable. October 6, 2004. - November 12, 2004.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Open and Gross Lewdness and Lascivious Behavior. Practice, Criminal,* Instructions to jury.

The evidence at the trial of a criminal complaint charging the defendant with open and gross lewdness and lascivious behavior in violation of G. L. c. 272, § 16, was insufficient to support a finding that the boys who witnessed the defendant's behavior were "alarmed or shocked." [772-775]

Statement that the "tender years" instruction derived from *Commonwealth* v. *Wardell*, 128 Mass. 52, 53 (1880), is at best confusing when given at the trial of a criminal complaint charging open and gross lewdness and lascivious behavior in violation of G. L. c. 272, § 16, in that the instruction suggests that it is unnecessary to prove one of the elements of the offense when children are involved; therefore, the present "tender years" Supplemental Instruction 5.42 of the Model Jury Instructions for Use in the District Court (1988) should not be given. [775-777]

At the trial of a criminal complaint charging the defendant with open and gross lewdness and lascivious behavior in violation of G. L. c. 272, § 16, the judge erred in not defining the term "recklessly" as used in his instructions to the jury [777-778], and in refusing to give an instruction on prior inconsistent statements [778].

COMPLAINT received and sworn to in the Falmouth Division of the District Court Department on November 13, 2001.

The case was tried before *Don L. Carpenter*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Max D. Stern* for the defendant.

*Julia K. Holler*, Assistant District Attorney, for the Commonwealth.

COWIN, J. A District Court jury found the defendant, Michael Kessler, guilty of open and gross lewdness and lascivious

behavior in violation of G. L. c. 272, § 16.[1] The defendant appealed, arguing (1) insufficient evidence of alarm or shock on the part of persons viewing his actions; (2) insufficient evidence that he exposed himself openly; and (3) prejudicial error in the judge's failure to instruct on the prior inconsistent statements of a witness. In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court reversed, based solely on the lack of a prior inconsistent statement instruction. *Commonwealth v. Kessler*, 60 Mass. App. Ct. 1119 (2004). We granted the defendant's[2] and the Commonwealth's applications for further appellate review and also reverse, but on a ground different than that of the Appeals Court.

*Facts.* In considering a question of the sufficiency of the evidence, we summarize the evidence in the light most favorable to the Commonwealth. *Commonwealth v. Latimore*, 378 Mass. 671, 676-677 (1979). Peter,[3] thirteen years of age at time of trial (June 5, 2002), and John, ten years of age at time of trial, were playing in the driveway of the house of John's grandmother on the morning of November 10, 2001. Peter heard a knock coming from a window of the house across the street, although he did not actually see anyone knocking. That house was owned by the defendant's mother. When Peter looked toward the sound, he could see a hand in the window "waving [him] to come over." He ignored it and continued playing. Peter heard a sound "like keys jingling" and went over to investigate. He stood in the driveway of the house next to the defendant's residence, about twenty feet from the window.

Peter could see a man masturbating through the window, although he could not identify him because he could only see the man's "private area" and stomach. Peter called to John,

---

[1] The defendant was also charged with indecent exposure in violation of G. L. c. 272, § 53. On conviction, the District Court judge dismissed the indecent exposure count as a lesser included offense of the open and gross lewdness conviction.

[2] Despite the Appeals Court's reversal of his conviction, the defendant sought further review. He requested that we address the sufficiency of the evidence; reversal on this ground would preclude retrial. See, e.g., *Neverson v. Commonwealth*, 406 Mass. 174, 175 (1989).

[3] We refer to both children by pseudonyms.

who joined him and saw someone stroking his "private area," masturbating. The boys "both looked at each other, and . . . started to giggle" and talk. Both described their laughter as a result of nervousness. Peter was "offended" by what he saw.

The grandmother, who had been raking leaves in her yard, called to the boys, asking what they were doing, but they did not respond. She called them over, and they crossed the street back toward her. They were both "excited." Neither would initially explain the cause of their giggling, but on further questioning, they told her that a man was masturbating in the window and described his actions with "hand gestures." The grandmother told them that this was not a laughing matter, and telephoned the police. Meanwhile, the boys observed the defendant move past a window, naked, and recognized him. They were familiar with him because John's mother cleaned the defendant's mother's house. A police officer arrived and, after conversing with the defendant, placed him under arrest.

The defendant testified that he had been naked that morning because he had been waiting to take a shower. He explained that the water in the upstairs shower would not heat up; he attributed the lack of hot water to his belief that the heat was not on upstairs. He turned the heat on, and while he was waiting, he played, still without any clothes on, with his mother's dogs in the living room. He denied seeing the boys outside his window, beckoning them with his hand, or masturbating that morning.

*Discussion.* 1. *Sufficiency of the evidence.* The judge denied the defendant's motions for the entry of a required finding of not guilty submitted at the close of the Commonwealth's case and at the close of all the evidence. In reviewing the denial of motions for a required finding of not guilty, "we must look at the evidence in the light most favorable to the Commonwealth to determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Ruci*, 409 Mass. 94, 96 (1991) citing *Commonwealth* v. *Latimore*, *supra* at 676-677.

The five elements of the offense of open and gross lewdness and lascivious behavior appear in Instruction 5.42 of the Model

Jury Instructions for Use in the District Court (1988).[4] While
G. L. c. 272, § 16, does not itself define "open and gross lewd-
ness and lascivious behavior," these five elements were gener-
ated by our case law. See, e.g., *Commonwealth* v. *Fitta*, 391
Mass. 394, 396 (1984) (defendant's act must be committed "in
such a way as to produce alarm or shock"); *Commonwealth* v.
*Adams*, 389 Mass. 265, 271-272 (1983) (holding that case law
had made clear that masturbating in car on public road was suf-
ficiently "open"); *Commonwealth* v. *Catlin*, 1 Mass. 8, 10
(1804) (conviction cannot be upheld for behavior between two
consenting adults in private residence as it is not "open").

The judge instructed the jury in accordance with the Model
Instructions. The defendant contends that there was insufficient
proof that the boys were "in fact alarmed or shocked," the fifth
element of the crime.

Even when we view the facts most favorably to the Com-
monwealth, they do not warrant a finding that either of the boys
was actually "alarmed or shocked." The prosecutor conceded at
trial that he did not "put any shock in the behavior." We take
this statement to mean that the Commonwealth was not contend-

---

[4]Instruction 5.42 of the Model Jury Instructions for Use in the District
Court (1988) provides, in part:

> "In order to prove the defendant guilty of this offense, the Com-
> monwealth must prove five things beyond a reasonable doubt:
>
> "First: That the defendant exposed his (her) genitals) (buttocks) (or)
> (female breasts) to one or more persons;
>
> "Second: That the defendant did so intentionally;
>
> "Third: That the defendant did so 'openly,' that is, either he (she)
> intended public exposure, or he (she) recklessly disregarded a
> substantial risk of public exposure, to others who might be offended by
> such conduct;
>
> "Fourth: That the defendant's act was done in such a way as to
> produce alarm or shock; and
>
> "Fifth: That one or more persons were in fact alarmed or shocked
> by the defendant's thus exposing himself (herself)."

This court has cited this instruction with approval most recently in *Com-
monwealth* v. *Quinn*, 439 Mass. 492, 501-502 (2003). See *Commonwealth* v.
*Guy G.*, 53 Mass. App. Ct. 271, 274 n.4 (2001).

ing that the boys were shocked by what they saw. Nor was there any evidence of alarm. Both boys stated that they were laughing because they were "nervous," not alarmed. They only left the window after two calls from the grandmother. She described them as "excited," but did not suggest that they were "alarmed."

Being "excited" or "nervous" may sometimes be unpleasant, but it does not connote the serious negative emotional experience required by the statute. Peter's strongest statement of his feelings was that he was "offended," but being offended is not the equivalent of undergoing "alarm or shock." That the exposure be "offensive to one or more persons" is an element required for indecent exposure, see *Commonwealth* v. *Fitta, supra* at 396, but an open and gross lewdness charge requires more. Indeed, the presence of "alarm or shock" is what distinguishes the open and gross offense from the indecent exposure offense. *Id.* at 396-397. Open and gross lewdness is a felony punishable by up to three years in State prison, while indecent exposure is a misdemeanor carrying a sentence of up to six months in a jail or house of correction. Compare G. L. c. 272, § 16, with G. L. c. 272, § 53. See G. L. c. 274, § 1. It is logical that there are elements of proof applicable to the felony that are not required for the misdemeanor, and our holding is consistent with that. See *Commonwealth* v. *Quinn*, 439 Mass. 492, 495-496 (2003); *Commonwealth* v. *Fitta, supra* at 396-397 (rejecting defendant's argument that G. L. c. 272, § 16, impermissibly overlaps with indecent exposure statute because requirement "that the defendant's act must be committed in such a way as to produce alarm or shock" indicates that "§ 16 requires proof of an element not required for indecent exposure").

Mere nervousness and offense has never been held sufficient to warrant a finding that the viewer was "in fact alarmed or shocked." See, e.g., *Commonwealth* v. *Wardell*, 128 Mass. 52, 53 (1880) (girl "fled in fright" to neighbor's house); *Commonwealth* v. *Guy G.*, 53 Mass. App. Ct. 271, 273 (2001) (observer told defendant he was "disgusting," and stated she felt "upset," "angry," and "sad" due to exposure, and was "too in shock" to tell another person about it immediately);

*Commonwealth* v. *Poillucci,* 46 Mass. App. Ct. 300, 303-304 (1999) (girl who witnessed exposure testified that she felt "very uncomfortable and nervous" and immediately alerted her parents that defendant was "weird"); *Commonwealth* v. *Gray,* 40 Mass. App. Ct. 901, 901 (1996) (observer stated he felt "disgust" at encounter and moved at once to contact police and identify perpetrators). In all these cases, the observer suffered significant negative emotions as a result of the exposure; thus his or her reaction could justifiably be deemed alarm or shock. Nervous giggling is not an equivalent, and the boys' reactions are insufficient to meet the fifth element of the open and gross lewdness charge.

Because the evidence is insufficient to support a finding that the boys were "alarmed or shocked," the judgment of the District Court on the open and gross lewdness charge must be reversed, and the case remanded with instructions that a judgment of acquittal enter on this count of the complaint. Consideration of other issues is unnecessary to the decision. However, given the importance of the other issues briefed by both parties, we choose to address them below.

2. *"Tender years" instruction.* In addition to instructing the jury on the five elements required for a conviction of open and gross lewdness, the judge gave a "tender years" supplemental instruction.[5] See Instruction 5.42 of the Model Jury Instructions for Use in the District Court. The "tender years" instruction apparently derives from the case of *Commonwealth* v. *Wardell,*

---

[5]The instruction, in relevant part, provided:

"I'm going to give those to you again. Five elements. First, that the defendant exposed his genitals to one or more persons. Second, that he did so intentionally. Third, that the defendant did so openly. That is: either he intended public exposure or he recklessly disregarded a substantial risk of public exposure to others who might be offended by such conduct. Fourth, that the defendant's act was done in such a way as to produce alarm or shock. And, fifth, that one or more persons were in fact alarmed or shocked by the defendant thus exposing himself.

"Now, jurors, if the Commonwealth has proved beyond a reasonable doubt that the defendant intentionally, indecently and offensively exposed himself to a child of tender years, it's up to you to determine whether these people were of tender years, without necessity or reasonable excuse and in such a way as to produce alarm, then you may find the defendant guilty of this offense.

*supra* at 53, where the term "tender years" was used in summarizing what the court held was sufficient evidence to support a verdict of guilt. However, that reference cannot be read as eliminating the fifth element (that the viewer actually experience alarm or shock as a result of the defendant's actions). To the contrary, the court specifically referenced the fact that the child who saw the exposure "fled in fright to a neighboring house."

The "tender years" passage from *Wardell* has been repeated in some of our more recent cases, but not in a context that suggests elimination or modification of the fifth element of the offense. See, e.g., *Commonwealth* v. *Quinn, supra* at 498 n.11; *Commonwealth* v. *Fitta, supra* at 396. Although both of these cases involved situations in which defendants exposed themselves to persons of "tender years," as is often the situation in prosecutions under G. L. c. 272, § 16, see *Commonwealth* v. *Sefranka*, 382 Mass. 108, 116 (1980), neither case suggested that that factor eliminated the necessity of establishing all five elements. In the case of *Commonwealth* v. *Quinn, supra*, we referred to the "tender years" language of *Wardell*, but only to support the proposition that "[c]onvictions under G. L. c. 272, § 16, have usually concerned exposure in front of children." The *Quinn* case also reaffirmed that conviction requires proof of the fourth and fifth elements. "Conviction of 'open and gross lewdness,' G. L. c. 272, § 16, . . . requires the Commonwealth to prove, among other elements, intention, manner (done in such a way as to produce alarm or shock), and impact (does in fact alarm or shock)." *Id.* at 496. The *Fitta* case, cited by the Commonwealth, is not to the contrary. It too repeats the above quoted *Wardell* language, but does not state that this language eliminates any of the five elements. See *Commonwealth* v. *Fitta, supra*. The "tender years" instruction is at best confusing, as it suggests that it is unnecessary to

"Now, those are the five elements for open and gross lewdness, it's called. If the Commonwealth has proven all five elements beyond a reasonable doubt, then it is your duty, your obligation and your responsibility to find the defendant guilty of open and gross lewdness."

prove one of the elements where children are involved. Even when, as in the present case, it is sandwiched between two statements requiring proof of five elements, it is a misleading formulation of the law and should be avoided in the future.

We do not suggest that the age of the viewer is necessarily irrelevant to the offense. Rather, we take this occasion to clarify that it is potentially relevant to the fourth element (done in such a way as to produce alarm or shock), but not to the fifth element (does in fact alarm or shock). The jury's assessment whether the manner in which the act was done was such as to produce alarm or shock may take into account the entirety of the surrounding circumstances, including the young age of the person viewing the defendant's conduct. When the victim is a child, there is arguably a greater risk of harm due to the child's immaturity, lack of experience, natural tendency to fantasize, and presumed ignorance of sexual matters. Where appropriate, counsel may argue this point, but no instruction to that effect should be given. The fifth element requires that the viewer in fact suffer alarm or shock, and the mere youth of the viewer does not relieve the Commonwealth from proving that alarm or shock actually resulted from the defendant's conduct. The present "tender years" Supplemental Instruction 5.42 of the Model Jury Instructions for Use in the District Court, which suggests that the age of the observer may obviate the need to establish the fifth element of the offense of open and gross lewdness, should not be given.

3. *Definition of "recklessly."* In his instructions, the judge defined the third element as "that the defendant did so openly. That is: either he intended public exposure or he recklessly disregarded a substantial risk of public exposure . . . ." He never defined "recklessly," despite an objection by defense counsel and a request for further definition.

When a term such as "recklessly" is used in jury instructions, it should be defined. See, e.g., *Commonwealth* v. *Fuller*, 421 Mass. 400, 411 (1995) ("judge should explain the meaning of technical terms where that meaning is obscure and there is a possibility of confusion"). Here there is the possibility that the jury would not realize that recklessness requires more than mere negligence or a showing that someone "might" see the

defendant. See *Commonwealth* v. *Kelley*, 25 Mass. App. Ct. 180, 187-188 (1987). A definition would have avoided this problem.

4. *Prior inconsistent statement instruction.* Peter, who testified at trial that he saw a hand beckoning him over, did not mention the hand in a statement he made to the police at the time of the incident. The responding police officer testified that he did not believe Peter told him anything about the hand. This testimony called for an instruction on prior inconsistent statements, yet, despite defense counsel's objection, the judge refused to give such an instruction.

"The failure to give a requested instruction on the use of prior inconsistent statements in assessing the credibility of a witness is error if there is evidence that a witness made prior inconsistent statements." *Commonwealth* v. *Ortiz*, 39 Mass. App. Ct. 70, 71 (1995), citing *Commonwealth* v. *Martin*, 19 Mass. App. Ct. 117, 119-120 (1984). Failure to mention something in an earlier statement is inconsistent with a later statement of fact "when it would have been natural to include the fact in the initial statement." *Commonwealth* v. *Ortiz, supra* at 72.

*Conclusion.* The judgment of the District Court on the open and gross lewdness charge is reversed, the verdict set aside, and the case remanded with instructions to enter a judgment of acquittal on this count of the complaint.[6]

*So ordered.*

---

[6]The indecent exposure conviction was dismissed by the judge. See note 1, *supra.* Neither party has raised the status of that conviction in this appeal, and we do not reach that issue.