NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-752                                    Appeals Court


COMMONWEALTH  vs.  LAWRENCE F. MAGUIRE.


No. 14-P-752.

Suffolk.     February 27, 2015. - August 11, 2015.

Present:  Vuono, Milkey, & Blake, JJ.


Open and Gross Lewdness and Lascivious Behavior.  Resisting
     Arrest.  Practice, Criminal, Required finding.


     Complaint received and sworn to in the Roxbury Division of
the Boston Municipal Court Department on October 15, 2010.

     The case was tried before David B. Poole, J.


     Bradford R. Stanton for the defendant.
     Anthony Riley (Matthew T. Sears, Assistant District
Attorney, with him) for the Commonwealth.


     VUONO, J.  Following a jury trial in the Boston Municipal

Court, the defendant, Lawrence F. Maguire, was convicted of open

and gross lewdness and lascivious behavior in violation of G. L.

c. 272, § 16, and resisting arrest in violation of G. L. c. 268,

§ 32B.[1]  On appeal, the defendant claims that the evidence was insufficient to support the convictions.[2]  We affirm.

Background.  As is required in considering a question of the sufficiency of the evidence, "we must look at the evidence in the light most favorable to the Commonwealth to determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v. Ruci, 409 Mass. 94, 96 (1991), citing Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  A reasonable jury could have found the following facts.

On the afternoon of October 14, 2010, Detective Sean Conway of the Massachusetts Bay Transportation Authority (MBTA) and the defendant were on a train headed for the Park Street station. Once the train arrived at the station, the defendant transferred to another train and sat down across from a college-aged woman. Unbeknownst to the defendant, Detective Conway had followed him

---

[1] The jury acquitted the defendant of assault and battery on a public employee, G. L. c. 265, § 13D, and the lesser included offense of assault and battery.

[2] The defendant moved for a required finding of not guilty at the close of the Commonwealth's case and renewed his motion at the close of all the evidence.  The defendant testified on his own behalf and denied engaging in any inappropriate or criminal behavior.  As the jury was entitled to reject the defendant's testimony in its entirety, the Commonwealth's case did not deteriorate with the presentation of the defendant's case.  See Commonwealth v. Berry, 68 Mass. App. Ct. 78, 81 (2007).  Therefore, we limit our discussion of the evidence to that presented by the Commonwealth in its case-in-chief.

and was standing about eight to ten feet away when he saw the defendant rub his penis with his hand over his pants for thirty seconds to a minute.[3] The defendant alighted from the train at the Hynes Convention Center station, and Detective Conway continued to follow him.

Upon arriving on the station platform, Detective Conway saw the defendant lean against a pillar with his hands in front of him. There were about twenty to twenty-five people on the platform and two or three women sitting on a bench five to six feet away from the defendant. The defendant faced the women and jerked his head up and down as if he was seeking their attention, and then he began to move his hands as if he was preparing to urinate. Detective Conway was approximately thirty feet behind the defendant when he observed this behavior, which he demonstrated to the jury.

In order to better see what the defendant was doing, Detective Conway crossed over the platform to the other side of the tracks. As he was coming down the stairs, he had a clear view of the defendant, who, while still facing the women sitting on the bench, had exposed his penis. Detective Conway testified that he saw the defendant's penis for one or two seconds and was

_____

[3] The record does not disclose the reasons for which Detective Conway initially followed the defendant.

"disgusted" and "concerned" that the women sitting on the bench were being "victimized" by the defendant's behavior.

Almost simultaneously with seeing the defendant expose his penis, Detective Conway made eye contact with the defendant, who immediately tried to zip up his pants and ran away. Detective Conway returned to the other side of the platform and attempted to speak with the women for whom he was concerned. However, for reasons which are not clear from the record, he was not able to communicate with them. Meanwhile, the defendant was running away; thus, Detective Conway cut short his inquiry and chased after the defendant. During the ensuing pursuit, Detective Conway said, "[S]top, police," to no avail. Eventually, Detective Conway caught up with the defendant, and once again commanded the defendant to stop by repeating, "[S]top, police." At this point, the defendant stopped, turned toward Detective Conway, and put up his fists in a fighting stance. He then punched Detective Conway in the "chest and arm area." Detective Conway struggled with the defendant for two to three minutes before he was able to subdue him and place him in handcuffs.

Discussion. 1. Open and gross lewdness. While the statute, G. L. c. 272, § 16, does not define "open and gross lewdness and lascivious behavior," our decisional law requires proof of five elements to support a conviction: "that the defendant (1) exposed genitals, breasts, or buttocks; (2)

intentionally; (3) openly or with reckless disregard of public exposure; (4) in a manner so 'as to produce alarm or shock'; (5) thereby actually shocking or alarming one or more persons." Commonwealth v. Swan, 73 Mass. App. Ct. 258, 260-261 (2008) (Swan), quoting from Commonwealth v. Kessler, 442 Mass. 770, 773 & n.4 (2004).  See Instruction 7.400 of the Criminal Model Jury Instructions for Use in the District Court (2009).  The defendant contends there was insufficient evidence as to all five elements.

Our review of the evidence leaves us with no question as to the sufficiency of the evidence with regard to the first four elements.  Detective Conway's testimony of his observations permitted a rational jury to find beyond a reasonable doubt that the defendant "exposed" his penis and that he did so "intentionally" and "openly."  Furthermore, because the defendant exposed himself while facing the women sitting on a bench, and in a public place, the jury also could infer that this action was done in such a way so as to cause alarm or shock.  See Swan, supra at 261 (defendant's positioning himself in close proximity to victim considered as evidence that defendant exposed himself in a manner so as to produce shock or alarm).  However, the sufficiency of the evidence as to the fifth element of the offense, which requires the Commonwealth to prove that the defendant actually caused one or more persons to

experience shock or alarm, is a closer question.  We recently addressed the quantum of evidence required to prove this element beyond a reasonable doubt in Commonwealth v. Pereira, 82 Mass. App. Ct. 344, 346-348 (2012) (Pereira).  In that case, we said that "[w]here an 'observer suffered significant negative emotions as a result of the exposure,' the observer's reaction 'could justifiably be deemed alarm or shock,' [sufficient] to convict a defendant of open and gross lewdness."  Id. at 347, quoting from Commonwealth v. Kessler, supra at 775.  We further noted that "[w]itnesses are not required to use any special words to express that they experienced a significant negative emotion" and "[c]ourts have found a variety of formulations of negative emotions to satisfy the element of causing actual shock or alarm, so long as the emotions were of a significant character."  Pereira, supra at 347.

Our decision in Pereira, contrary to the conclusion reached by the dissent, controls the outcome here.  In that case, we concluded that a rational jury could have found beyond a reasonable doubt that the defendant's actions -- masturbating while sitting in his vehicle, which was parked near the Sullivan Square MBTA station -- produced the requisite shock and alarm in a police officer who observed the defendant.  The officer's attention was drawn to the defendant because "he had his head down" and "his right shoulder was hunching up and down."  Id. at

345.  The officer approached the defendant's vehicle and upon looking in the window observed the defendant with his pants down, masturbating.  Ibid.  The officer described his reaction to the defendant as feeling "personally, angry, a little bit disgusted."  Ibid.  The officer also noted that it was "a busy area, a lot of women around there, kids, everything so I wasn't happy about it."  Ibid.

Here, Detective Conway stated that the defendant's exposure caused him to feel "disgusted" and "concerned that the females that were sitting on the bench were being victimized by his behavior."  The defendant argues that "disgust" and "concern," absent other evidence, are too equivocal to convey a significant negative emotion.  We note no significant distinction between the "little bit disgusted" and "angry" described by the police officer in Pereira and the "disgust" and "concern[ ]" described by Detective Conway.[4]  See Commonwealth v. Gray, 40 Mass. App. Ct. 901, 901 (1996) (evidence sufficient where victim, a member

---

[4] We respectfully disagree with the conclusion reached by our dissenting colleague that Detective Conway's feeling of "disgust" was of a "vicarious sort" more akin to being offended than shocked or alarmed and, therefore, insufficient to satisfy the fifth element of the offense charged.  That a rational jury could reasonably so conclude is inconsequential.  The question so often repeated in our cases is whether any rational trier of fact could conclude, beyond a reasonable doubt, that the defendant's actions produced shock or alarm in Detective Conway.  Moreover, that the detective, according to the dissent, should not have been surprised by the defendant's conduct does not preclude a finding that he was, in fact, shocked or alarmed.

of the maintenance staff at a shopping mall, was "disgusted" by sight of two men engaged in act of fellatio in public bathroom); Commonwealth v. Poillucci, 46 Mass. App. Ct. 300, 303-304 (1999) (even though witness "did not express herself hysterically," a rational fact finder could conclude that she had been "shocked or alarmed" based on her description of what she saw and that she felt "very uncomfortable and nervous"); Swan, 73 Mass. App. Ct. at 261 (witness's testimony that he was "grossed out" and "nervous" sufficient for finding that he was "alarmed").

Further, contrary to the defendant's assertion, Detective Conway's expressed concern for the public is relevant in that it illuminates "how the circumstances surrounding the incident influenced [Detective Conway's] reaction to it," Pereira, 82 Mass. App. Ct. at 348, and, ultimately, supports the conclusion that the defendant's conduct caused him to be shocked or alarmed.  Accordingly, we conclude that the judge did not err in denying the defendant's motion for a required finding of not guilty.

2.  Resisting arrest.  A defendant resists arrest if "he [or she] knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:  (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a

substantial risk of causing bodily injury to such police officer or another."  G. L. c. 268, § 32B(a), inserted by St. 1995, c. 276.  The crime occurs at the time an officer is "effecting" an arrest, which is when "there is (1) an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained."  Commonwealth v. Grandison, 433 Mass. 135, 145 (2001) (quotation omitted).  The relevant inquiry is an objective one:  i.e., whether, under the circumstances, a reasonable person would have understood that he was being arrested.  Commonwealth v. Grant, 71 Mass. App. Ct. 205, 208 (2008).

Viewed in the light most favorable to the Commonwealth, the evidence established that in response to Detective Conway's repeated commands of "[S]top, police," the defendant continued to run, and when the detective caught up with the defendant, the defendant assumed a fighting stance and threw a punch at the detective.  Afterward, the defendant struggled with Detective Conway, even though the detective repeatedly ordered him to place his hands behind his back.  Even if we were to assume, as the defendant claims, that he did not initially recognize Detective Conway as a police officer (Detective Conway was not in uniform, but he wore a badge and his firearm was visible), the evidence was sufficient to support the finding that the

defendant understood that Detective Conway was a police officer when he said, "[S]top, police." Moreover, given the protracted struggle to place him in handcuffs and the shouts to comply, a reasonable person would have understood that he or she was subject to arrest. See Commonwealth v. Quintos Q., 457 Mass. 107, 111 (2010). Accordingly, we reject the defendant's challenge to his conviction of resisting arrest.

Judgments affirmed.

MILKEY, J. (concurring in part and dissenting in part). There plainly was sufficient proof that the defendant committed an indecent exposure under G. L. c. 272, § 53. That statute requires only an "intentional act of lewd exposure, offensive to one or more persons." Commonwealth v. Swan, 73 Mass. App. Ct. 258, 261 (2008) (quotation omitted). However, as the Supreme Judicial Court has repeatedly emphasized, significant additional proof is required for the far more serious charge of open and gross lewdness under G. L. c. 272, § 16.[1] See Commonwealth v. Kessler, 442 Mass. 770, 774 (2004) (Kessler) (insufficient proof that defendant's masturbating in front of window constituted open and gross lewdness). Because I believe the necessary additional proof is absent here, I respectfully dissent.[2]

As the Supreme Judicial Court has made clear, "the central purpose of G. L. c. 272, § 16, [i]s one of preventing fright and intimidation, particularly regarding children." Commonwealth v. Ora, 451 Mass. 125, 128 (2008) (Ora). A conviction under that statute requires, inter alia, proof beyond a reasonable doubt that at least one person was in fact "alarmed" or "shocked" by a

---

[1] Open and gross lewdness is a felony punishable by up to three years in State prison. G. L. c. 272, § 16. Indecent exposure is a misdemeanor punishable by up to six months in a jail or house of correction. G. L. c. 272, § 53.

[2] I agree with the majority that there was sufficient evidence to support the defendant's conviction of resisting arrest.

defendant's conduct.  See Kessler, supra at 772-773 & n.4.  Open and gross lewdness is a "much more serious offense than . . . indecent exposure and consequently requires a substantially more serious and negative impact as a result of the behavior."  Ora, supra at 127 (citation omitted), citing Kessler, supra at 774-775.  Detective Conway was the only known eyewitness to the defendant's exposing himself,[3] and consequently, the Commonwealth's case depended on proof that the exposure caused the detective to experience a "serious negative emotional experience" above and beyond "mere nervousness [or] offense."  Kessler, supra at 774.  In my view, the Commonwealth did not come close to meeting its burden here.

As we recently held, the Commonwealth may put forward a police officer as the victim of an open and gross lewdness charge, and this does not raise the Commonwealth's burden of proof.  Commonwealth v. Pereira, 82 Mass. App. Ct. 344, 348 (2012) (Pereira).  However, relying on a police officer as the victim obviously also cannot lower the Commonwealth's burden; it still must prove that the officer personally was "alarmed" or "shocked" by a defendant's conduct.  To be sure, Detective Conway stated that he "was disgusted" upon seeing the

---

[3] The Commonwealth presented no evidence that the women on the bench or any person other than Detective Conway in fact observed the defendant's exposure.  Detective Conway himself was able to view the defendant's exposed penis only by running up the stairs to get to the opposite subway platform.

defendant's exposed penis, and the majority accurately points out that such language is similar to that used by witnesses in cases in which convictions for open and gross lewdness have been affirmed.  See, e.g., Commonwealth v. Gray, 40 Mass. App. Ct. 901, 901 (1996) (victim "disgusted" by sight of oral sex act in public bathroom).  But, as the cases make clear, the specific language used by an eyewitness to alleged open and gross lewdness is not dispositive.  See Pereira, supra at 347 ("Witnesses are not required to use any special words to express that they experienced a significant negative emotion").  Just as the absence of any particular language in a witness's description of his reaction is not necessarily fatal to the Commonwealth's case, so too the presence of any particular language is not necessarily sufficient.

Here, the detective himself went on to explain in detail the nature of his reaction.  Immediately after noting that he "was disgusted," he elaborated that he "was concerned that the females that were sitting on the bench were being victimized by [the defendant's] behavior."  Thus, his "disgust" was of a vicarious sort, born of his "concern" that others might be affected by the defendant's behavior.  In this sense, Detective Conway used the term "disgusted" to mean something analogous to "offensive" under the indecent exposure statute.  See Commonwealth v. Cahill, 446 Mass. 778, 781 (2006) ("Offensive

acts are those that [are] . . . repugnant to the prevailing sense of what is decent or moral") (quotation omitted).

The rest of the detective's testimony reinforces that he personally was <u>not</u> "shocked" or "alarmed." He acknowledged that it was "common" for him to see exposed penises in such settings as public restrooms and locker rooms, and that he personally was not disgusted by seeing them. In addition, he hardly can claim surprise by the sight of the defendant's penis after the great lengths he went to in order to put himself in a position to see it.[4] After the detective observed the defendant's exposed penis, he proceeded in a prompt but measured manner to effect the defendant's arrest. His moving in this manner is not evidence of his "shock" or "alarm" but, rather, is merely evidence that

---

[4] The fact that Detective Conway voluntarily placed himself in a position to observe the defendant's penis itself raises some doubt as to the validity of this prosecution. The Supreme Judicial Court has made clear that the open and gross lewdness "statute cannot be constitutionally applied to public displays of lewdness and nudity unless they are imposed upon an unsuspecting or unwilling audience." <u>Ora</u>, 451 Mass. at 126, citing <u>Revere</u> v. <u>Aucella</u>, 369 Mass. 138, 142-143 (1975), appeal dismissed sub nom. <u>Charger Invs., Inc</u>. v. <u>Corbett</u>, 429 U.S. 877 (1976). Needless to say, an officer who views offensive conduct as part of his or her job is differently situated from a civilian who voluntarily views such conduct. However, the differences do not necessarily aid the Commonwealth. Cf. <u>Commonwealth</u> v. <u>Mulvey</u>, 57 Mass. App. Ct. 579, 584 (2003) (evidence that officers were concerned with disruption caused by defendant's yelling by itself could not satisfy public element of disorderly conduct charge; "behavior that has an impact only upon members of the police force is significantly different from that affecting other citizens in [part because] it is an unfortunate but inherent part of a police officer's job to be in the presence of distraught individuals").

he effectively was doing his job. Contrast Commonwealth v. Gray, 40 Mass. App. Ct. at 901 (highlighting that citizen victim reacted "swiftly" by moving to stop the defendants and to contact the police). Simply put, a police officer's moving quickly to arrest someone that he observed exposing his genitals in public reveals nothing about the officer's emotional state.

Nothing in Pereira dictates an affirmance here. That case involved a public sex act (masturbation) rather than mere exposure, and the officer there testified that he was "angry" in addition to being somewhat "disgusted." Pereira, 82 Mass. App. Ct. at 345. Moreover, Pereira does not state that a police officer's "disgust" on behalf of others, without more, suffices to support a finding that the officer was "alarmed or shocked." Reading Pereira in this manner would render it inconsistent with Kessler. In addition, this would allow the Commonwealth to convert any ordinary indecent exposure case into one for open and gross lewdness anytime there was a police eyewitness who was willing to state that, out of concern for others, he or she was "disgusted" by the defendant's actions.

In sum, I believe there was insufficient evidence that the defendant's conduct here caused a "substantially more serious and negative impact" on the detective than that required to make out a case of indecent exposure. Ora, 451 Mass. at 127. I therefore would reverse the defendant's conviction of open and

gross lewdness and remand for entry of a conviction on the lesser included crime of indecent exposure.