NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-1030

COMMONWEALTH

vs.

JOHN FIGUEIREDO.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the

defendant, John Figueiredo, was convicted of indecent assault

and battery on a child under the age of fourteen, and open and

gross lewdness.  On appeal, the defendant contends that the

judge erred by (1) mishandling first complaint evidence,

(2) admitting prior bad acts evidence, and (3) providing a

"tender years" instruction.  We affirm.

Background.  The victim was twenty-four years old at the

time of trial.  The defendant and the victim's mother (mother)

began dating in 2004, and the three of them "moved in together

---

[1] As is our custom, we use the version of the defendant's name as it appears in the complaint.

in the winter" of that year.  The victim described various incidents of abuse that occurred between 2005, when she was five years old, and 2012, when she was twelve.

Specifically, in January or February 2005, the defendant "c[a]me up from behind" the victim while she was "standing in front of the fridge," and "grabbed [her] right butt cheek with his hand open handed."  The victim asked him to stop, but the defendant said, "he did not have to because he was an adult."

In 2006, the defendant entered the six year old victim's room while he "was naked from the waist down."  His penis was erect, and he told her to "lay down on the bed, face down," got on the bed himself, held her down, and "used his penis and rubbed it against [her] back and buttock."  The victim was "extremely afraid" and felt that she did not have any way to defend herself.  The defendant told the victim that if she "told [the] mother then he would harm or kill [the victim] and leave [her] body where [her] mother could find it."  The victim was scared and "did not want to tell [her] mother and risk [her] safety."

In or around 2008, while the mother was away, the defendant called out to the victim.  She went downstairs to the basement and saw the defendant with "his pants around his ankles, and he was masturbating to child pornography on the television."  While

2

he was masturbating, the defendant asked the victim "to come and sit on his lap on the couch." He directed the victim to "stand still" and "then proceeded to lift [her] shirt up and began groping [her] right breast and instructed [her] to stay still and watch the TV." The defendant again told the victim not to tell the mother and threatened to harm and strangle the victim if she disclosed the incident.

In 2011, when the victim was eleven, the defendant entered her room while she was working on a school project. He sat on her bed, undid his zipper, exposed his erect penis, and masturbated in front of her while telling her "how hot [she] was" and telling her that he "wished that [she] was [her] mom so that he could impregnate [her]." The defendant "eventually" ejaculated on the floor in front of her. He again warned the victim not to tell her mother. The defendant attempted to assault the victim again when she was twelve years old. During this final incident, the victim refused to touch him and told him that she would call the police and tell her mom "if he tried to make [her] touch him again." The incidents ceased at this time.

In 2017, the victim and the mother stopped living with the defendant because he had an affair, which upset both the mother and the victim. The mother and the defendant divorced in 2017,

3

and the victim has not had contact with the defendant since 2017.

In 2019, the victim reported the incidents to the police. At that time, she told them that she thought that the defendant was in the United States "illegally" and "wanted him deported." That report was incorrect.[2]

Discussion. 1. First complaint issues. The defendant argues that the first complaint doctrine was violated in multiple ways, which caused prejudicial error. Added context is needed to address this claim. Before trial, the Commonwealth filed a motion in limine (1) identifying the mother as the first complaint witness and (2) anticipating that she would testify that following an argument with the victim in the spring of 2019, the victim disclosed that the defendant had sexually abused her. When the motion was argued before the judge, defense counsel noted that the victim made her disclosure in the presence of her mother, her grandmother, and a police officer, and thus it was "not that clear" that the mother was the appropriate first complaint witness. The judge ruled that the mother could testify as the first complaint witness.

---

[2] We address additional facts, including the defense strategy at trial, below.

4

At trial, the victim testified, to the surprise of the prosecutor and defense counsel, that she first disclosed the abuse to her mother in 2014. The defendant objected because he had been informed that the first complaint had been made in 2019. At sidebar, defense counsel argued that the admission of this testimony was problematic because the mother would be testifying next as a first complaint witness. The judge advised that he would exclude the victim's testimony regarding the alleged 2014 disclosure. Defense counsel contended that excluding the testimony was insufficient. The judge then asked, "what are you asking me to do?" Defense counsel responded, "I don't think you can put the first complaint witness on." At this time, the judge ruled that the first complaint witness would still be allowed to testify. The judge then sustained the defendant's objection and excluded the answer regarding the 2014 disclosure.

The victim then testified that "[t]he first time" that she spoke to her mother about the abuse was in 2019. She told her mother about the incidents and further testified that her grandmother was also present during that conversation. The defendant did not object to this testimony.

On cross-examination, defense counsel had the victim "reiterate" that "the first time that [she] told anybody about

5

anything that happened" was in 2019 during a fight with her mother. Defense counsel further elicited, among other things, that the defendant had been out of her life since 2017; that she was upset that her mother was controlling her life; and that she lashed out at her mother and "started saying that suddenly [her] stepfather had been molesting [her]," in order to hurt her mother. In addition, defense counsel elicited that when the victim told her mother about the abuse, both her grandmother and a police officer were also present.

Following the victim's testimony, the parties conducted a voir dire of the mother during which she testified that the victim disclosed the abuse to her in 2018 or 2019.[3] Following the voir dire, defense counsel repeated his argument that the mother should not be allowed to provide first complaint testimony. The judge agreed and precluded the mother from testifying as a first complaint witness.[4]

The following day of trial, during a charge conference, the judge stated, "there's no first complaint, so there's no

---

[3] During the voir dire, the mother first testified that the disclosure occurred between 2017 and 2019, then testified that it occurred in 2019 or 2018. In any event, her voir dire testimony clarified that the victim did not make any disclosure to her in 2014.

[4] The mother subsequently did testify before the jury, but not as to any first complaint evidence.

6

instruction on that."  Defense counsel did not object.  In closing argument defense counsel contended, consistent with his opening statement and strategy throughout trial, that the case "rest[ed] entirely" on the victim's credibility, the victim was not credible, she concocted the stories of abuse because she was angry at her mother, and "[s]he made it up."  Defense counsel also highlighted the victim's testimony wherein she claimed to have disclosed the abuse to her mother in the presence of a police officer and her grandmother; yet neither witness testified to any such thing, and, indeed, neither testified at all at trial.  As defense counsel told the jury,

> "[w]ouldn't you want to hear from them?  Wouldn't you want to hear what exactly went on that day and what was said and the manner in which it was said? . . . Where were the police officers?  Where's the grandmother?  If they overheard this, why aren't they here?"

With this background in mind, we address the defendant's contention that the first complaint doctrine was violated because the victim was allowed to testify that she disclosed the abuse to her mother in or around 2019.  We first note that the defendant did not object to the victim's brief testimony and thus our review is limited to whether there was error, and if so, we then inquire whether the error created a substantial risk

7

of a miscarriage of justice.[5]  See Commonwealth v. Alphas, 430

Mass. 8, 13 (1999).  Assuming that it was error to admit the

victim's testimony, we discern no such risk.  The testimony was

brief, the prosecutor did not reference the impermissible

testimony in closing argument, and the judge provided the very

remedy sought by the defendant at trial -- i.e., he precluded

the mother from testifying as a first complaint witness.

Moreover, defense counsel made a tactical decision to use the

alleged 2019 disclosure date to attack the victim's credibility

and did so in a skillful closing argument.  See Commonwealth v.

Roderiques, 462 Mass. 415, 428 (2012) ("The consequences of

trial tactics may not be converted after conviction into alleged

errors by the judge" [citation omitted]).  Finally, we note that

the prosecutor did not reference first complaint testimony in

closing argument.  In these circumstances, the victim's claim

that she disclosed the abuse to her mother in 2019 did not

create a substantial risk of a miscarriage of justice.  See

---

[5] The defendant objected to the victim's testimony regarding the alleged 2014 disclosure, and the judge sustained the objection and excluded that testimony.  The defendant did not object to the victim's testimony regarding the disclosure to the mother in 2019.  We further note that the judge instructed the jurors at the outset of trial that if he sustained an objection, they were to disregard the question and not speculate about what the answer might have been, and that they were to disregard any evidence that was "stricken from the record."  See Commonwealth v. Durand, 475 Mass. 657, 669 (2016) (jurors presumed to follow judge's instructions to disregard evidence).

*Commonwealth* v. *Roby*, 462 Mass. 398, 409-410 (2012) (no substantial risk of miscarriage of justice where testimony was brief, provided no details of sexual encounter, and prosecutor did not use in closing argument); *Commonwealth* v. *McCoy*, 456 Mass. 838, 851 (2010).

We likewise discern no substantial risk of a miscarriage of justice from the absence of a first complaint limiting instruction. As noted above, the judge struck the victim's testimony regarding the alleged 2014 disclosure and did not allow the mother to testify to any first complaint. Additionally, the defendant neither sought such an instruction, nor disagreed or objected when the judge ruled that "there's no first complaint, so there's no instruction on that." In short, we are confident that the alleged error did not materially influence the verdict, and we do not "have a serious doubt whether the result of the trial might have been different had the error not been made" (citation omitted). *McCoy*, 456 Mass. at 850.

2. <u>Prior bad acts evidence</u>. The defendant contends that the judge erred by allowing the mother to testify to a prior bad act. Where the defendant objected to the admission of the prior bad acts evidence, we review for abuse of discretion. See *Commonwealth* v. *McCowen*, 458 Mass. 461, 478 (2010).

9

The mother testified that at the time of the alleged incidents, she noted changes in the victim's demeanor, which included resentment toward the defendant and resentment toward the mother as well.  Asked about this resentment, the mother testified that it stemmed from "the arguing and all the confrontational -- the growing up and the -- the abuse that I had toward [the defendant] to me."[6]  The judge overruled the defendant's objection and motion to strike this testimony.  The judge found that the testimony was relevant to show the atmosphere in the home at the time, and to show that the victim "stayed away from [the defendant] because of what was going on between the mother and the [defendant]."[7]  We agree.  The testimony was brief, unclear, and difficult to follow.  Further, it was relevant and properly admitted for the limited purpose of demonstrating the nature of the relationship among the parties.  See, e.g., Commonwealth v. Centeno, 87 Mass. App. Ct. 564, 567 (2015).  It was also relevant to explain the victim's delayed

---

[6] The judge asked the mother, "when you talk about abuse, you're talking about between you . . . and the defendant."  The mother responded, "Right.  So she . . . resent[ed] me because of the abuse.  Yes."

[7] The jury was already aware of the family tension as the victim had already testified that she stayed away from the defendant and had no contact with him after divorce proceedings were initiated in 2017, and that she was mad at the defendant and wanted nothing more to do with him after she and the mother moved out of the home.

disclosure and alleged inconsistent statements.[8]  See, e.g.,

Commonwealth v. Childs, 94 Mass. App. Ct. 67, 72 (2018).  In the

context of this trial, we discern no abuse of discretion or

prejudicial error.[9]

3.  Tender years instruction.  To prove open and gross

lewdness in the context of the present case, the Commonwealth

had to show that the defendant (1) exposed his genitals "to one

or more persons"; (2) "did so intentionally"; (3) did so openly

(i.e., intended public exposure, or "recklessly disregarded a

substantial risk of public exposure, to others who might be

offended by such conduct"); (4) did so "in such a way as to

produce alarm or shock"; and (5) "one or more persons were in

fact alarmed or shocked by the defendant's thus exposing

himself."  Commonwealth v. Kessler, 442 Mass. 770, 773 n.4

(2004).  In the present case, during the charge conference, the

judge proposed that he would provide the jury with a

---

[8] The victim also testified that she delayed reporting the abuse because of her fear of the defendant who had threatened her at the time of the crimes.

[9] To be clear, although the defendant did not request any limiting instruction, the better practice would have been to provide such an instruction.  Nonetheless, for the reasons discussed above, we discern no prejudice warranting reversal. See Commonwealth v. Thomas, 429 Mass. 146, 156 (1999) (passing remark viewed in overall trial context not prejudicial).

supplemental "tender years" instruction.[10]  Neither party

objected to the judge's proposal nor to the giving of the

instruction in the final jury charge.[11]  The defendant now claims

that the instruction was error and requires reversal.

We agree that the instruction should not have been given.

See Kessler, 442 Mass. at 777 ("tender years" supplemental

instruction should not be given because fifth element of open

and gross lewdness "requires that the viewer in fact suffer

alarm or shock, and the mere youth of the viewer does not

relieve the Commonwealth from proving that alarm or shock

actually resulted from the defendant's conduct").  The question

thus becomes whether, absent any objection, the instruction

created a substantial risk of a miscarriage of justice.  See

Alphas, 430 Mass. at 13.  Here we discern no such risk.  The

defense at trial was that the victim "made it up" and, as

_____

[10] The instruction proposed by the judge, and subsequently given to the jury, read as follows:

"if the Commonwealth has proved beyond a reasonable doubt that the defendant intentionally, indecently and offensively exposed himself to a child of tender years without necessity or reasonable excuse and in such a way as to produce alarm, then you may find the defendant guilty of this offense."

[11] In response to a jury question regarding the elements of open and gross lewdness, the judge repeated the same instruction including the tender years supplemental instruction, with no objection.

defense counsel articulated at trial, the present case hinged "entirely" on the victim's credibility. There was no contention that the victim was not in fact alarmed or shocked by the defendant's conduct. Indeed, such an argument would have been inconsistent with the evidence and arguments presented to the jury, including the victim's testimony that she was "extremely afraid" and scared. See Commonwealth v. Poillucci, 46 Mass. App. Ct. 300, 303-304 (1999). Moreover, the judge instructed the jury that each of the five elements of open and gross lewdness had to be proved beyond a reasonable doubt. The instructions were clear, and we presume the jury followed them. See Commonwealth v. Donahue, 430 Mass. 710, 718 (2000). Viewing the instructions as a whole, we cannot say that the error was "sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been

otherwise but for the error." <u>Alphas</u>, <u>supra</u>, quoting

<u>Commonwealth</u> v. <u>Miranda</u>, 22 Mass. App. Ct. 10, 21 (1986).

<u>Judgments affirmed</u>.

By the Court (Neyman, Hershfang & Toone, JJ.[12]),

Clerk

Entered:  May 12, 2026.

---

[12] The panelists are listed in order of seniority.

14